15 N.J. Super. 34 (1951)
83 A.2d 24
THOMAS PALATINI, PLAINTIFF-RESPONDENT,
v.
HAMPAR SARIAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1951.
Decided June 18, 1951.
*37 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Ward Kremer argued the cause for the plaintiff-respondent (Mr. Isadore I. Zlotkin, attorney).
Mr. Robert V. Carton argued the cause for the defendant-appellant (Messrs. Durand, Ivins & Carton, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
The defendant, Hampar Sarian, appeals from a judgment entered against him by direction of the court. We are of the opinion that certain factual issues were raised at the trial of this action which necessitated their submission to the jury.
On August 16, 1948, the parties entered into a written contract of sale of certain premises in the Borough of Belmar, Monmouth County, for the sum of $6,500, $200 of which was paid at the execution thereof and the balance was to be paid as follows: $800 on September 15, 1948, and on the date for closing title, January 3, 1949, $2,250 in cash, and a bond and mortgage in the amount of $3,250. The defendant stopped payment on his check of September 15, 1948, for $800, contending that the contract was entered into on the understanding that he could build up to the property line. Subsequently, the defendant had conferences with one Isadore I. Zlotkin, attorney for the plaintiff, and Floyd Palatini, a *38 brother of the plaintiff, who held a power of attorney from the plaintiff, dated October 2, 1948, and which was not revoked until the first of July, 1949. The defendant testified that, as a result of these conferences, new terms were reached for payment of the balance of the purchase price and that by giving to the defendant a promissory note for $800 payable six months thereafter with interest at six per cent per annum, an extension of time for final settlement was granted, and in addition thereto, the defendant was to pay the real estate taxes on the premises. These assertions of the defendant were denied at the trial by the plaintiff's witnesses. However, the $800 note was not returned at any time to the defendant. In February, 1949, plaintiff's attorney, Isadore I. Zlotkin, telephoned defendant that the note was not acceptable, whereupon the defendant informed Mr. Zlotkin that the note had been accepted and new arrangements had been made as heretofore mentioned. Subsequently, on February 21, 1949, as a result of a further discussion between Mr. Zlotkin and the defendant, the defendant contends that Mr. Zlotkin suggested that the parties consider the contract void and that the defendant should move out of the premises, which was agreeable to the defendant. The plaintiff contends that on February 21 the defendant called Mr. Zlotkin and told him he could not perform the contract and asked whether it could be rented to him and was advised by Mr. Zlotkin that he believed that it was not possible. On February 26 Mr. Zlotkin wrote to defendant advising him that unless he carried out the terms of the contract by March 16, declaring time to be of the essence, he would consider the defendant in default. On March 11 Mr. Zlotkin wrote to defendant rejecting his offer to perform the contract for $4,000, in lieu of $6,500. On March 16 the defendant vacated the premises and on June 30, 1949, the plaintiff entered into a contract to sell the premises to a third party for the sum of $4,000. This sale was consummated. It is conceded that at no time was any tender made by either party to the other for the performance of the terms of the contract.
*39 It is apparent that the theory of the plaintiff's case called for performance by the defendant on January 3, 1949, and that since the defendant defaulted on that date, the court, on motion of the plaintiff, directed the entry of judgment in favor of the plaintiff and against the defendant in the sum of $2,500 (with interest thereon from January 3, 1949), concededly being the difference between the alleged value of the property as represented by the sale thereof at $4,000, and the $6,500 agreed to be paid by the defendant. It is undisputed that the judgment erroneously failed to give credit to the defendant for the $200 down-payment. The defendant contends that the original contract of August 16, 1948, had been amended by agreement supported by a consideration, to wit: the promissory note for $800 and agreement to pay the taxes; that the defendant, therefore, was not obliged to perform on January 3, 1949, the time for performance having been extended to July, 1949; that Mr. Zlotkin, purportedly acting for the plaintiff, Thomas Palatini, had no power or authority to fix March 16, or any other date, as time of the essence; that if the said Isadore Zlotkin did have the power to act on behalf of the plaintiff, then the agreement was mutually terminated and thereby the parties waived their respective rights under the contract, in consideration of which the defendant vacated the premises; that the plaintiff, in violation of the agreement of extension, entered into a contract on June 30, 1949, to sell the premises to a third party; the plaintiff, therefore, was not ready or willing to perform on July 15, 1949, and by reason of such acts of the plaintiff there was no obligation on the part of the defendant to be in a position to perform; and finally, in order to put the defendant in default it was incumbent on the plaintiff to have ready for execution and delivery to the defendant a deed to the premises and to make tender thereof on January 3, 1949, if that be the date for performance by the defendant, or on March 16, 1949, if that be the date, or on July 15, 1949, if that be the date for performance by the defendant, and that the plaintiff was not, on any of the mentioned dates, *40 or at any other time, ready or prepared to make tender to the defendant in order to put the defendant in default.
It is obvious from the foregoing factual recital that there was conflicting testimony with respect to (1) whether the settlement date fixed in the agreement for January 3, 1949, required the plaintiff to make tender of the deed to the defendant, or whether the facts justified plaintiff's failure to make such tender; (2) whether an effective agreement had been entered into for the postponement of the settlement date for six months from January 3, 1949; (3) whether the settlement date was extended to March 16, 1949; and (4) whether shortly before defendant vacated the premises there was a mutual abandonment of the contract of sale.
In considering the motion for involuntary dismissal of an action, the court must accept as true all evidence which supports the view of the party against whom the motion is made, and must give him the benefit of all inferences which may be logically and legitimately drawn therefrom in his favor. Rules 3:41-2 and 3:50, McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229, 243 (1950). Where, as here, fair-minded men might honestly differ as to the conclusions to be drawn from the facts, whether controverted or uncontroverted, the questions at issue should be submitted to the jury. Antonio v. Edwards, 5 N.J. 48 (1950); Gentile v. Pub. Service Transportation Co., 12 N.J. Super. 45 (App. Div. 1951).
The defendant contends that the court erred in permitting Mr. Zlotkin, plaintiff's attorney, over the defendant's objection, to testify from a memorandum for the purpose of refreshing his recollection in view of the fact that the memorandum had been made in March, 1950, the occurrences covered thereby taking place between August, 1948, and March, 1949. The rule is settled, of course, that the witness may be permitted to refresh his recollection from a memorandum made contemporaneously with the occurrences to which the witness is called upon to testify, such use being intended to refresh "the mind of the witness, that he can *41 with safety be allowed to recur to them in order to remove any weakening of memory on his part, which may have supervened from lapse of time." Putnam v. United States, 162 U.S. 687, 40 L.Ed. 1118 (1896), at p. 1121. Cf. Cooper v. Endress Motors, Inc., 123 N.J.L. 290 (E. & A. 1939); Mausert v. Mutual Distributing Co., 94 N.J.L. 222 (E. & A. 1920); More-Jonas Glass Co. v. W.J., &c., R.R. Co., 76 N.J.L. 708 (E. & A. 1909); Wigmore on Evidence, vol. 3, sec. 761, at p. 105. While the court's action in permitting the witness to testify from the memorandum in question may have been erroneous, it is undisputed that the witness had in his possession at the time he was testifying the original memoranda which he had made contemporaneously with the occurrences concerning which he was testifying. These original memoranda were available for the inspection of the defendant. However, he did not seek an examination thereof, but was content to base his objection on the witness' use of the memorandum summarizing the contents of the several memoranda. Under the circumstances, we are satisfied that the defendant suffered no manifest wrong or injury by the court's action.
In view of the fact that our decision calls for a new trial, we think it essential to discuss the criticism of the court's ruling in excluding production of evidence in the possession of Mr. Zlotkin on the ground of its privileged character. Generally, the evidence sought by the defendant consisted of transactions between the plaintiff and Mr. Zlotkin, his attorney, and pertaining to the alleged authority of Mr. Zlotkin to act for the plaintiff with respect to the contract of sale and its enforcement. Professor Wigmore, in his treatise on evidence, has said of privileged communications in an attorney and client relationship, that the following constitutes a phrasing of the essentials grouped in their natural sequences:
"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure *42 by himself or by the legal adviser, (8) except the protection be waived." Wigmore on Evidence (3d ed.), vol. 8, sec. 2292, p. 558.
In Wigmore on Evidence (3d ed.), vol. 8, sec. 2318, pp. 617, 618, Professor Wigmore, in discussing the principles of discovery as applied to documents and communications between attorney and client, states:
"In the first place, a document of the client existing before it was communicated to the attorney is not within the present privilege so as to be exempt from production (ante, sec. 2307). But a document which has come into existence as a communication to the attorney, being itself a communication, is within the present privilege (ante, sec. 2307). Documents of the latter sort are therefore exempt from production under a bill of discovery; while documents of the former sort are not exempt from production under a bill of discovery or the modern statutory motion to produce, although at common law the party as such would not have been compellable to produce. That is to say, at common law, he was protected in the first instance as party and in the second instance as client; while in chancery and under statutes he has ceased to be protected as party but is still protected as client. Only those documents, therefore, which he has created as a communicating client are now privileged."
In 58 Am. Jur., sec. 480, at p. 268, the principle as applied to the capacity in which an attorney is employed is stated thusly:
"The privilege accorded to communications between attorney and client is limited to communications made to the attorney in his professional capacity, to those instances in which a strict relation of attorney and client exists; where an attorney is employed for some other purpose than to conduct litigation, to give advice on legal questions, or to engage in some other activity peculiarly within the province of an attorney at law, communications made during the course of that employment are not accorded protection from disclosure. This is the case where an attorney acts as an agent for another, as an attorney in fact, or as a notary public."
The courts of this State have followed the general principles outlined above. See Matthews v. Hoagland, 48 N.J. Eq. 455, 464 (Ch. 1891); State v. Krich, 123 N.J.L. 519, 521 (Sup. Ct. 1939); Russell v. Second National Bank of Paterson, *43 136 N.J.L. 270, 278 (E. & A. 1947); In the Matter of Stein, 1 N.J. 228, 236 (1949); Lindner v. First Nat. Bank & Trust Co. of Montclair, 9 N.J. Super. 569 (Law Div. 1950). The plaintiff introduced into evidence two letters written by Attorney Zlotkin to defendant. One stated, "I am willing to give you until March 16 to perform the contract and am declaring time of essence in behalf of Mr. Palatini." The other stated, "Your offer to perform the contract for the sum of $4,000 * * * is not accepted." It was permissible for the defendant to question whether these two actions of Zlotkin were authorized by plaintiff and to this end he might properly cross-examine Zlotkin. Making time of the essence and rejecting an offer of compromise where there is no litigation pending, are not within the province of an attorney-at-law, but are acts of an attorney in fact. The written or oral communications vesting authority in the agent, who happens to be a lawyer, do not seem to us privileged under the foregoing applicable rules.
The judgment is reversed and a new trial directed. Costs to abide the event.