76 N.J. Super. 291 (1962)
184 A.2d 435
METALSALTS CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF,
v.
ROBERT O. WEISS, DEFENDANT AND THIRD PARTY PLAINTIFF,
v.
JOHN ELLIOTT, R.C. CHANDLER, EDWARD WALSH, ARTHUR L. GOESCHEL, NATHANIEL GRIER, PAUL E. DOHERTY AND ELLEN B. ELLIOTT, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 17, 1962.
*293 Mr. Leo Rosenblum, for plaintiff and third-party defendants.
Mr. George Warren, for defendant and third-party plaintiff.
COLLESTER, J.S.C.
This matter was remanded to this court by the Appellate Division of the Superior Court (71 N.J. Super. 360 (1962)) for a hearing and determination of the issue involved, namely, whether an attorney-client relationship existed between Paul E. Doherty and Metalsalts Corporation (Metalsalts), defendants on the counterclaim and third-party complaint, at the time the defendant Doherty made a certain investigation which resulted in the submission of his report to the board of directors of said corporation on February 10, 1961.
In the main action Metalsalts brought suit to compel the defendant therein, Robert O. Weiss, to perform an alleged agreement to assign his interest in a patent application to the corporation. Weiss contested Metalsalts' right to the relief sought; counterclaimed against the corporation and brought a third-party action against certain directors and stockholders thereof, including Paul E. Doherty, seeking damages for an alleged libel and slander based on statements contained in the minutes of the meetings of the board of directors and stockholders.
The corporation and individual third-party defendants in their answer asserted the alleged defamatory statements were true and were privileged.
Weiss, who was president, a director and an employee under an employment contract with Metalsalts, was removed as president of the corporation on November 19, 1960. He *294 continued to be a director and an employee. Weiss demanded arbitration on the issue of his removal as president under the terms of his employment contract.
Thereafter, in January 1961, the defendant John B. Elliott, chairman of the board of directors, requested the defendant Paul E. Doherty to conduct an investigation of Weiss. Mr. Doherty, a New Jersey attorney and a member of the firm of New York attorneys who were retained by Metalsalts as general counsel, made the investigation. Mr. Doherty was also a stockholder of the corporation. In April 1961, subsequent to the acts complained of, he was elected a director and secretary of the corporation.
On February 10, 1961 Mr. Doherty made an oral report of his investigation at a meeting of the board of directors. As a result of said report Weiss was discharged as an employee.
The material facts of Mr. Doherty's report were set forth in the minutes of the meeting of the board of directors which were prepared by Mr. Doherty as "secretary of the meeting." The alleged defamatory remarks contained in the minutes are the basis of the libel and slander action brought by Weiss.
In determining the issue before this court, I deem it important to consider the chronological sequence of events in the litigation between the parties. The demand for arbitration of his removal as president of Metalsalts was made by Weiss on November 17, 1960. The answer thereto by the corporation was made on December 2, 1960. The request by John B. Elliott, chairman of the board of directors, to Paul E. Doherty to conduct an investigation of Robert O. Weiss was made in January 1961. The oral report of Mr. Doherty's investigation was presented to the board of directors and set forth in the minutes at the meeting of the board held on February 10, 1961. Metalsalts instituted its suit against Weiss in this court on April 25, 1961. The counterclaim and third-party complaint alleging libel and slander was filed on May 1, 1961. The arbitration proceeding instituted by Mr. Weiss was conducted by the American Arbitration Association at hearings held on May 1, 8 and 17, 1961.
*295 On June 7, 1961, pursuant to our court rules, R.R. 4:16-1 et seq., Mr. Doherty appeared for oral examination by deposition under pretrial discovery proceedings. When he was interrogated concerning the investigation he made of Mr. Weiss at the request of Mr. Elliott and the report thereof contained in the minutes of the directors' meeting of February 10, 1961, Mr. Doherty refused to answer. His contention was that as attorney for Metalsalts Corporation he is bound by the attorney-client privilege and has no right to divulge communications had with his client without the latter's consent, which has not been given.
At the hearing conducted by this court the testimony of Mr. Doherty was taken and there were received in evidence the deposition of Mr. Doherty taken June 7, 1961 and the record and transcript of the arbitration proceedings above mentioned. The last-mentioned exhibits contain the testimony of John B. Elliott and others who testified in the arbitration proceeding.
The minutes of the directors' meeting containing the alleged defamatory words are as follows:
"The Chairman then presented for discussion the subject of the employment contract between the corporation and Mr. Robert O. Weiss. He requested Mr. Doherty to report to the Board the results of his investigation into Mr. Weiss' conduct and the company's right to terminate the employment contract. Mr. Doherty made an oral report to the Board of Directors on Mr. Weiss' assertion of ownership of the Metasol 57 patent application; his attempts to interfere with granting of the patent; his refusal to open the letter to him found in the company's safe deposit box in the presence of the Board of Directors; the shortages of inventory which occurred during his operation of the corporation; the sale of products by the company at less than their cost of production; his failure to obtain timely testing of seed disinfectant agents; his arrangements with Canadian agents for the corporation; his failure to increase prices of existing contracts with the corporation's customers; his interference with correspondence between customers and employees of the corporation; his directions to accounting employees to carry false accounts receivables and other matters. * * *"
At the hearing before this court, counsel for Mr. Weiss indicated that the subject matter of the inquiry he desired *296 to make of the defendant Doherty by means of depositions concerned the investigation made by Doherty upon which the report contained in the directors' minutes of February 10, 1961 was based, including the names and addresses of persons he spoke to during the course of the investigation; the details of such conversations; the capacity in which each person was employed by the corporation; what documents, books or records he inspected during the investigation, steps taken to confirm or corroborate information obtained by him and related matters.
Weiss asserts that some of the statements which were contained in the minutes of the meeting of the board of directors held on February 10, 1961 constitute charges of the commission of a crime, adversely affect him in his trade, business and profession, and are within those classes of statements which are slander per se. He alleges that he is entitled to interrogate the defendant Doherty in pretrial discovery proceedings, since the elements of malice, lack of good faith, belief in the truth of the statements and proof of the falsity thereof are essential factors in a libel and slander suit.
He states that if the defendant Doherty is permitted to use the attorney-client privilege as a bar to proper discovery proceedings, the privilege will be used as a shield to protect himself and other third-party defendants against liability for their tortious conduct, and his right to discovery under our rules will be rendered valueless.
It is a long-established rule of the common law, embodied in New Jersey by statute, N.J.S. 2A:84A-20, that an attorney is not permitted and cannot be compelled to testify as to communications made to him in his professional character by his client, unless his client consents. The rule is based upon the grounds of public policy, and must be enforced by the courts, unless its enforcement is waived by the client. 58 Am. Jur., Witnesses, section 460, p. 259.
Our statute, supra, provides:
"(1) General Rule. * * * communications between lawyer and his client in the course of that relationship and in professional *297 confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, * * *. The privilege shall be claimed by the lawyer unless otherwise instructed by the client or his representative * * *.

* * * * * * * *
(3) Definitions. As used in this rule (a) "client" means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity; * * *." (Emphases added)
However, the privilege accorded to communications between attorney and client is limited to communications made to the attorney in his professional capacity, to those instances in which a strict relation of attorney and client exists. 58 Am. Jur., Witnesses, section 480, p. 268. In Hansen v. Janitschek, 57 N.J. Super. 418 (App. Div. 1959), the dissenting opinion of Judge Conford, adopted per curiam by the Supreme Court, 31 N.J. 545 (1960), stated at p. 433:
"The attorney-client privilege has a well-defined place in our jurisprudence, and where it is properly applicable, must be given as broad a scope as accords with its rationale  safeguarding a client's freedom from apprehension in consulting his legal advisor, assured by removing the risk of disclosure by the attorney, even at the hand of the law. State v. Kociolek, 23 N.J. 400, 415, (1957). Nevertheless, since the privilege results in the exclusion of evidence, the doctrine `runs counter to the fundamental theory of our judicial system that the fullest disclosure of facts will best lead to the truth and ultimately to the triumph of justice.' In re Selser, 15 N.J. 393, 405 (1954). It is therefore to be strictly limited to the purposes for which it exists. Ibid., and at pages 406, 407 of 15 N.J. In Palatini v. Sarian, 15 N.J. Super. 34 (App. Div. 1951), it was held that even where a general relation of client and attorney exists, written or oral communications from the client to the attorney having only to do with the latter's agency to act for the former in a particular matter as an agent or attorney in fact do not come within the privilege. The court quoted with approval (15 N.J. Super., at p. 41) Wigmore's phrasing of the essentials of the privilege as: `(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such (3) the communications relating to that purpose (4) made in confidence (5) by the client * * * [are protected unless waived]' * * *.
*298 It is the generally recognized rule that the privilege applies only to communications made to the attorney where the `strict relation of attorney and client exists,' not where he acts as an agent or an attorney in fact for another. The activity must be `peculiarly within the province of an attorney at law.' 58 Am. Jur., Witnesses, § 480, p. 268. * * *"
In the case sub judice it is obvious from the testimony before me that the investigation of Robert O. Weiss, conducted by the defendant Paul E. Doherty at the request of John B. Elliott, chairman of the board of directors of Metalsalts, consisted of communications made by the officers, directors and employees of Metalsalts to Mr. Doherty as a "corporate agent" or attorney in fact, and not based strictly upon the relation of attorney and client. The investigation was not undertaken to prepare the defense of the corporation to be offered at the arbitration case. It had for its objective the procuring of sufficient facts concerning the activities of Weiss to warrant his discharge as an employee. The following testimony before this court is pertinent:
"Mr. Warren. At the time of the request made to you by Mr. John Elliott, [the request to undertake the investigation] you said he made the request to you to ascertain the possibilities of Mr. Weiss being dismissed as an employee. Is that correct?
Mr. Doherty. Yes, I said that.
Mr. Warren. At that time he was Chairman of the Board?
Mr. Doherty. That is correct."
In the transcript of testimony of John B. Elliott, before the American Arbitration Association on May 8, 1961 the following appears:
"Mr. Ray. Is it your testimony that Mr. Doherty went to the plant prior to February 10, 1961, to make an investigation of the reasons for the possible discharge of Mr. Weiss?
Mr. Elliott. It is my understanding that he did."
It must be noted that at the time Elliott requested Doherty to make the investigation, Mr. Weiss was still employed by the corporation, although he had been displaced *299 as president. The only litigation pending was the arbitration case brought by Weiss concerning his status as president.
While Mr. Doherty contends that Mr. Elliott's request to investigate Weiss was to advise the corporation whether or not it was justified in terminating the employment contract with Weiss, it is apparent that the legality of the contract was not in issue.
It is clear that Mr. Doherty was commissioned by Mr. Elliott to investigate the business operations of Mr. Weiss in the scope of his employment with the objective to bring about his discharge. Here, Mr. Doherty undertook to serve as an investigator and not as a lawyer. The service rendered could have been rendered by any corporate agent who was not a lawyer. It was not such an undertaking as required the legal services of a lawyer. Mr. Doherty was not undertaking the investigation as part of any litigation then pending between the parties, nor was he being called upon to render legal advice. In my opinion Mr. Doherty was not acting "peculiarly within the province of an attorney at law," and therefore the attorney-client privilege cannot be asserted as a bar to discovery proceedings. As was stated in In re Selser, supra, the privilege is to be strictly construed.
If all activities of a lawyer are to be classified as warranting the bar of discovery proceedings because of the attorney-client privilege, then it would be appropriate for clients to retain lawyers as investigators, custodians of records and the like, thereby turning the shield of the privilege into the sword of injustice. I cannot subscribe to this concept.
I am satisfied from the evidence presented that the services rendered by Mr. Doherty on behalf of the corporation in conducting an investigation of the business operations of Mr. Weiss were services not "peculiarly within the province of an attorney at law," that the communications made to Mr. Doherty by officials and employees of Metalsalts in the course of his investigation were not made within the strict relation of attorney and client but were made to him as a corporate agent. In my opinion neither Metalsalts nor Mr. Doherty *300 can assert the attorney-client privilege as a bar to the interrogation of Mr. Doherty in the pretrial discovery proceedings.
Counsel for Weiss, the third-party plaintiff, has raised as an alternative issue the question of whether or not Metalsalts has waived the attorney-client privilege, since it is clear that Elliott, chairman of the board of directors, and other corporation witnesses voluntarily testified at the arbitration hearing concerning the subject matter of Mr. Doherty's investigation. Since I have already determined that the attorney-client privilege does not exist, this alternative issue will not be considered.
A further point raised in opposition to the interrogation of Mr. Doherty by means of pretrial depositions is the contention that Weiss seeks information concerning the "work product" of a lawyer, contrary to R.R. 4:16-2.
Mr. Doherty appears in this action as a third-party defendant; he is not the attorney in this cause. Furthermore, I have already concluded that Mr. Doherty's actions in conducting the investigation of the business operations of Mr. Weiss were in his capacity as a corporate agent and not as an attorney for Metalsalts. I see no merit in the contention that the information sought by pretrial depositions of Mr. Doherty violates the "work product" rule.
Accordingly, it is my opinion that Mr. Paul E. Doherty can be examined in a pretrial discovery proceeding and shall be directed to answer all questions pertaining to his investigation of the business operations of Robert O. Weiss which formed the basis of his oral report to the board of directors of Metalsalts at the meeting of February 10, 1961. Such interrogation will not be limited to the foregoing but may extend to all issues within the scope of R.R. 4:16-2.
An order in accordance with this opinion, consented to as to form or to be settled on notice, pursuant to R.R. 4:55-1 will be presented.