**Avelino LEONEN and Dolores Leonen, Plaintiffs,**

**v.**

**JOHNS–MANVILLE, et al., Defendants.**

**Civ. A. No. 82–2684(CSF).**

United States District Court,
D. New Jersey.

July 18, 1990.

See also 717 F.Supp. 272.

James C. Gavin, Gavin & Gavin, Haddonfield, N.J., for plaintiffs.

Mark Shuford, Wright, Robinson, McCammon, Ostheimer and Tatum, Richmond, Va., Raymond R. Chance, III, Horn, Kaplan, Goldberg, Gorny & Daniels, Atlantic City, N.J., for defendant, Owens Corning Fiberglas Corp.

## OPINION

FREDA L. WOLFSON, United States Magistrate.

Presently before the Court is defendant Owens–Corning Fiberglas Corporation's ("OCF") motion for a protective order that would prohibit the discovery of certain documents subpoenaed by the plaintiffs in this asbestos case. Plaintiffs' latest request for production stems from defendant's recent discovery of a large number of relevant documents. Defendant has already made substantial production, but asserts that the documents it is presently withholding are protected by the attorney-client privilege and/or the work product doctrine as codified in *Fed.R.Civ.P.* 26(b)(3). Also before the Court is plaintiffs' motion for an Order granting leave to amend the pretrial order to include any documents that have recently been produced by the defendant. These matters are being considered after having reviewed the moving papers, the opposition thereto, the documents that were produced *in camera* and the oral argument of counsel.

On December 28, 1989, the clerk of the court issued a deposition subpoena directing defendant to produce 67 documents. Defendant voluntarily produced request numbers 1, 2, 3, and 10. Subsequent to the filing of the motion, and just days prior to oral argument, the Court was informed that plaintiffs were withdrawing their requests for documents 4, 5, 6, 58, 59, 64 and

11. Defendant has also voluntarily agreed to produce document numbers 8, 9, 12, 22, 57, as well as number 7, subject to the redaction of the handwritten notes of in-house counsel. The Court was therefore left with the task of reviewing the remaining 50 documents for privilege.[1]

## WORK PRODUCT

■ I turn first to the applicability of the work-product doctrine which must be considered independently from the attorney-client privilege, since work product is distinct from, and broader than, the attorney-client privilege. *See Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); *Clark v. City of Munster*, 115 F.R.D. 609, 613 (N.D.Ind.1987). The work-product doctrine, codified in *Fed. R.Civ.P.* 26(b)(3), governs all cases in federal court. *See United Coal Companies v. Powell Construction Company*, 839 F.2d 958 (3d Cir.1988). State formulations of the privilege are inapplicable. *See Pete Rinaldi's Fast Foods Inc. v. Great American Insurance Companies*, 123 F.R.D. 198 (M.D.N.C.1988).

■ Rule 26(b)(3) provides for a qualified privilege that protects documents prepared in anticipation of litigation by a party or for the party's attorney or other representative. The privilege can be overcome only upon a showing that there is a substantial need for the documents and that the substantial equivalent cannot be obtained without undue hardship. Opinion work-product, such as an attorney's legal strategy or evaluation of a case's strengths and weaknesses, is almost absolutely privileged. *See Sporck v. Peil*, 759 F.2d 312 (3d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). Disclosure of such material is far outweighed by the interest in protecting an attorney's thought processes. *Id.* The doctrine, while protective of an attorney's opinions, does not protect the facts that underlie the opinions. A party may obtain such facts through the adversarial process by asking questions in the appropriate areas. *See Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515 (D.N.J. 1987). Although the discovering party must show a substantial need for materials protected under the work-product doctrine, the party asserting that privilege has the initial burden of showing that the materials are in fact protected. *Casson Construction Company, Inc. v. Armco Steel Corporation*, 91 F.R.D. 376, 385 (D.Kan.1980). In order to fall within the protection of Rule 26(b)(3), the party must establish that the document or tangible thing was "prepared in anticipation of litigation."

■ The phrase "anticipation of litigation" is incapable of precise definition and therefore courts have applied various tests to determine the necessary connection between the creation of the material to the prospect of litigation. *See Winter Panel Corporation v. Reichhold Chemicals, Inc.*, 124 F.R.D. 511, 515 (D.Mass.1989) (must be substantial probability of litigation, a mere possibility is not enough); *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir.1977) (work-product rule does not apply simply because of remote prospect of future litigation); *Home Insurance Company v. Ballenger Corporation*, 74 F.R.D. 93, 101 (N.D.Ga.1977) (substantial probability that litigation will occur and that commencement of such litigation is imminent). The Third Circuit has adopted the test outlined in 8 C. Wright and A. Miller, Federal Practice and Procedure § 204, at 198 (1970):

> "Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."

*See In re Grand Jury Investigations*, 599 F.2d 1224, 1229 (3d Cir.1979); *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979).

---

1. Defendant by way of a letter dated March 27, 1990, offered to assist the Court in its *in camera* review; I rejected that suggestion.

The distillation of these various formulae leads to the inescapable conclusion that there must have been an identifiable specific claim or impending litigation when the materials were prepared. *See Hardy v. New York News, Inc.*, 114 F.R.D. 633, 644 (S.D.N.Y.1987), citing, *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer.Ct.App.1985) ("If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated."); *Resident Advisory Board v. Rizzo*, 97 F.R.D. 749, 754 (E.D.Pa. 1983); *Coastal Corporation v. Duncan*, 86 F.R.D. 514, 522 (D.Del.1980); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 515 (D.Conn. 1976); *Cf. Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862, 869 (1st Cir.1982). Thus, the mere fact that litigation does eventually occur, does not by itself bring documents within the ambit of the work-product doctrine. *Binks Manufacturing Company v. National Presto Industries, Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983). To hold otherwise, would allow any company which produces potentially harmful products, to insulate from discovery, documents related to such products, simply by involving in-house counsel at the earliest stages of the products' history.

Turning now to the documents at issue here, it is clear from their dates, that none of these documents were prepared in anticipation of this action. Therefore, the question is, were the documents prepared in anticipation of any litigation, and, if so, should that protection extend to this case. Defense counsel has represented to the Court that the first asbestos-related action in which OCF was named as a party, was in 1966. The earliest health related complaints received by OCF regarding its fiberglass products, date back to 1941, and OCF maintains that, as early as 1939, it was aware that there might be litigation stemming from these products. While defendant reserves its right to contest the relevancy of these documents at trial, OCF does concede that for discovery purposes the materials are indeed relevant.

Although some courts will extend the protection of the work-product rule to an unrelated case, regardless of the lack of connection of the issues or facts between the actions, *see Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 724 (N.D.Ill.1978), this Court follows that line of cases which requires a close connection in parties or subject matter between the two matters. *See Jaroslawicz v. Engelhard Corporation*, 115 F.R.D. 515, 517 (D.N.J.1987); *Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 153 (D.Del.1977); *United States v. International Business Machine*, 71 F.R.D. 376, 379 (S.D.N.Y.1976); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 (1970). Under this latter rule, it is evident that documents concerned with the production and dangers of fiberglass are unrelated for purposes of extending the work-product doctrine to this asbestos action. However, this Court finds that the remaining documents, which deal with asbestos and its dangers post–1966, were prepared in anticipation of asbestos litigation since at that point there was identifiable litigation. Defendant maintains, and the Court agrees, that all of the asbestos litigation to which OCF has been a party, share similar factual and legal issues. Accordingly, documents 23, 34, 56, 60, 61, 62 [2] and 63 shall be afforded the protection of the work-product rule.

Additionally, documents 29, 30, 31 and 33 shall be protected since these insurance claims reports relate to worker's compensation actions filed by three individuals not involved in this case. These reports relate to actual claimants and therefore were prepared in anticipation of impending litigation. *See Janicker v. George Wash-*

---

**2.** Documents 60, 61 and 62 were apparently gathered for a potential deposition. In *Sporck v. Peil*, 759 F.2d 312 (3d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985), the court stated that "the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly protected category of opinion work product." *Id.* at 316; *see also Omaha Public Power District v. Foster Wheeler Corp.*, 109 F.R.D. 615, 616 (D.Neb.1986).

*ington University,* 94 F.R.D. 648, 650 (D.D.C.1982); *Fontaine v. Sunflower Beef Carrier,* 87 F.R.D. 89, 92 (E.D.Mo.1980). Document 33 consists of defendant's draft answers to interrogatories in another asbestos action. Since there was pending litigation, this document is also protected.

Furthermore, the Court finds that the protection should not be pierced as to the aforementioned documents because plaintiff cannot show a substantial need for these marginally relevant documents.

## ATTORNEY/CLIENT

Rule 501 of the Federal Rules of Evidence directs this Court to look to state law in deciding questions of privilege when jurisdiction is based on diversity. *See United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 965 (3d Cir.1988); *Samuelson v. Susen,* 576 F.2d 546 (3d Cir.1978). Thus, the attorney client privilege is governed by New Jersey law. While the federal attorney-client privilege is absolute, the New Jersey state privilege is qualified. *Compare Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir.1977) *with In re Kozlov,* 79 N.J. 232, 398 A.2d 882 (N.J.1979). Nonetheless, the state courts recognize the same policies behind the privilege as do the federal courts. The privilege exists to promote full and frank discussions between attorneys and their clients. *See United Jersey Bank v. Wolosoff,* 196 N.J.Super. 553, 561, 483 A.2d 821 (App.Div.1984); *Upjohn Company v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

■ It is beyond cavil that the privilege extends to corporations which must act through their agents, including officers and employees. *See United Jersey Bank v. Wolosoff,* 196 N.J.Super. at 562, 483 A.2d 821; *In the Matter of Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120 (3d Cir.1986). Since a corporation must act through its agents, communications between an attorney and the corporation's employees, including lower level employees, will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege. *See*

*Upjohn Company v. United States, supra.* It should also be noted that the privilege is equally available to a corporation's in-house counsel. *See United Jersey Bank v. Wolosoff,* 196 N.J.Super. at 563, 483 A.2d 821; *see also Hasso v. Retail Credit Company,* 58 F.R.D. 425, 427 (E.D.Pa. 1973); *International Telephone and Telegraph Corporation v. United Telephone Company of Florida,* 60 F.R.D. 177, 185 (M.D.Fla.1973).

■ Protected communications can be written as well as oral. Where a privileged document has attachments, each attachment must individually satisfy the criteria for falling within the privilege. Merely attaching something to a privileged document will not, by itself, make the attachment privileged. *See Sneider v. Kimberly–Clarke Corp.,* 91 F.R.D. 1 (N.D.Ill. 1980). The privilege, however, protects only the disclosure of the protected document; it does not protect disclosure of the underlying facts in the documents. "Protection of the privilege extends only to communications not to facts. The fact is one thing and a communication concerning that fact is entirely different." *Upjohn Company v. United States,* 449 U.S. at 395–96, 101 S.Ct. at 685–86, *quoting Philadelphia v. Westinghouse Electric Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962).

■ In reviewing the documents for the attorney/client privilege, the Court has focused on whether the communications/documents were made to in-house counsel in their professional capacity as lawyers. *See United Jersey Bank v. Wolosoff,* 196 N.J. Super. at 563, 483 A.2d 821; *Metalsalts Corporation v. Weiss,* 76 N.J.Super. 291, 297, 184 A.2d 435 (Ch.Div.1962). Communications which relate to business rather than legal matters do not fall within the protection of the privilege. *See Metalsalts Corp.,* 76 N.J.Super. at 298–299, 184 A.2d 435; *Coleman v. American Broadcasting Companies,* 106 F.R.D. 201, 205 (D.D.C. 1985); *Cuno Inc. v. Pall Corporation,* 121 F.R.D. 198, 203 (E.D.N.Y.1988).

■ Although the rule is clearly stated, its application is difficult, since in the cor-

porate community, legal advice "is often intimately intertwined with and difficult to distinguish from business advice." *Sedco International, S.A. v. Cory,* 683 F.2d 1201, 1205 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). Therefore, the court's inquiry is focused on whether "the communication is designed to meet problems which can fairly be characterized as predominately legal." *Cuno,* 121 F.R.D. at 204, citing, 2 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 503(a)(1)(01). To prevent corporate attorneys from abusing the privilege by using it as a shield to thwart discovery, "the claimant must demonstrate that the communication would not have been made but for the client's need for legal advice or services." *First Chicago International v. United Exchange Company, Ltd.,* 125 F.R.D. 55, 57 (S.D.N.Y.1989). In *Metalsalts Corp., supra,* the court rejected a defendant's assertion of the attorney/client privilege since "the service rendered could have been rendered by any corporate agent who was not a lawyer. It was not such an undertaking as required the legal services of a lawyer." *Id.* at 299, 184 A.2d 435.

Based on the foregoing, I find that the attorney/client privilege applies to the following documents: 13, 19, 20, 21, 23, 24, 25, 26, portions of 27(01 046 0268), 28, 32, 34, 42, 47, portions of 51(01 501 1312), 52, 53, 54, 56, and the handwritten notes of 43.

## WAIVER

Interestingly, plaintiff has purchased 18 of the 62 requested documents through a service known as Mealey's Publication. These documents have been identified as document request numbers: 8, 9, 12, 14, 34, 36, the last page of 39, 40, 41, 42, 43, 44, 51, 52, 54, 58 and 67. It is plaintiff's position that since these documents are now in the public domain, any privilege

that may have attached has been waived. But defendant argues that production was ordered and thus, the privilege has not been waived as to these documents.[3]

As to those documents already in plaintiffs' possession, and where I have found no privilege attaches, there is no issue of waiver. However, with respect to those documents which I have found protected by the attorney-client privilege, (numbers 34, 42, portions of 51, 52, 53, and 54), the Court must reach the issue whether the privilege has been waived by defendant's previous court-ordered production of the documents.

The attorney/client privilege, equally shared by corporations, is similarly subject to the rules of waiver. *See Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 1990–91, 85 L.Ed.2d 372 (1985). It is axiomatic that any *voluntary* disclosure by the holder of such a privilege waives the privilege. *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1369 (C.A.D.C.1984). However, in the instant case, since defendant objected to the discovery and only produced the documents pursuant to a court order, defendant's disclosure cannot be considered voluntary. *See In re Grand Jury Proceedings, Vargas,* 723 F.2d 1461, 1466 (10th Cir.1983); *Teachers Insurance and Annuity Association of America v. Shamrock Broadcasting Company, Inc.,* 521 F.Supp. 638, 641 (S.D.N.Y.1981); *see also Miller v. Haulmark Transport Systems,* 104 F.R.D. 442, 445 (E.D.Pa.1984) (no voluntary waiver, where an objection was made to the discovery of a document at the time it was produced and marked as an exhibit at a deposition); *Transamerica Computer Company, Inc. v. International Business Machines, Corp.,* 573 F.2d 646, 651 (9th Cir.1978). In sum, the attorney/client privilege has not been waived for the documents already in plaintiff's possession.

---

**3.** Specifically, defendant contends that the production of these documents was made pursuant to an Illinois state court order in which the judge applied the control group test. New Jersey has adopted the *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) test for corporate/attorney-client relations, rejecting the control group test. Thus, defendant concludes that had the case been in New Jersey such documents would have been protected. Rather than examining the waiver issue in the context of "what might have been", the Court will focus on whether a court-ordered production of documents can be considered voluntary.

In contrast, document request number 39 has lost the protection of the attorney/client privilege since it was voluntarily shared with an employee of du Pont. Defendant's voluntary disclosure was not predicated upon a joint defense theory and therefore the privileged status of this document has been waived.

## PIERCING THE PRIVILEGE

█ Lastly, the Court must consider whether overriding public policy concerns compel disclosure of any of the documents protected under the attorney/client privilege. Under New Jersey law the privilege may be pierced when: (1) there is a legitimate need to reach the evidence sought to be shielded, (2) there is a showing of relevance and materiality of that evidence to the issue before the court, and (3) the party seeking to bar assertion of the privilege has shown by a fair preponderance of the evidence, including all reasonable inferences, that the information cannot be secured from any less intrusive means. *In re Kozlov*, 79 N.J. 232, 243-44, 398 A.2d 882 (1979). This point was not addressed by the parties in their briefs but after hearing the argument of counsel, I find that plaintiff has met this tripartite test for most of the documents withheld on the attorney-client privilege.

The documents that were recently discovered by the defendant are internal memoranda and other correspondence that may show if and when OCF became aware of the health dangers associated with asbestos. Plaintiffs have shown the need and relevancy of this material to their case. Moreover, these documents are unavailable from any less intrusive sources.

The documents in question can only be found within OCF files. More importantly, the information contained within the documents is no longer available. Many of the documents date back to the 1930's and 1940's. Plaintiffs maintain that they were once able to obtain information from E.C. Ames, who served as OCF's public relations manager, but he died several years ago, and plaintiffs are therefore unable to investigate the subject matter of these recently discovered documents. While defendant contends that many of the documents within the OCF library encompass the same issues or topics found in the documents at issue, defendant has not provided the Court with these comparable documents. Thus, the Court is unable to test defendant's position, and must reject it.

The Court further finds, that with respect to document numbers 26 and 32, plaintiffs fall short of the tripartite test.

## ORDER

IT IS on this 18th day of July 1990,

ORDERED that defendant's request for a protective order to prohibit the discovery of documents responsive to plaintiff's document requests is granted as to request numbers 23, 26, 29, 30, 31, 32, 33, 34, 56, 60, 61, 62, and 63 which are privileged; and it is further

ORDERED that defendant produce documents request numbers 1, 2, 3, 8, 9, 10, 12, 22, and 57, which defendant has voluntarily agreed to produce; and it is further

ORDERED that defendant need not produce document request numbers 4, 5, 6, 58, 59, 64 and 11, since plaintiff has withdrawn these requests; and it is further

ORDERED that defendant's motion to preclude production of document request numbers 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 25, 27, 28, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 65 and 66 is denied; and it is further

ORDERED that document numbers 7, 43, and 67 be produced subject to the redaction of any handwritten notes; and it is further

ORDERED that plaintiff's motion to amend the pretrial order to include documents being produced pursuant to this ORDER is granted; and it is further

ORDERED that the production of these documents be subject to a protective order limiting disclosure only to the parties and counsel to this action, as well as any experts retained and the information shall be used for purposes of this action only; and it is further

ORDERED that the above documents be produced to plaintiff, with appropriate redactions, no later than 5 days from the date of this Order.