**Melissa ROBERTSON, Plaintiff,**

v.

**The CENTRAL JERSEY BANK & TRUST COMPANY, et al., Defendants.**

**Civ. A. No. 91–3383 (GEB).**

United States District Court, D. New Jersey.

Oct. 5, 1993.

Robert B. Reed, Flemington, NJ, for plaintiff, Melissa Robertson.

Paul V. Fernicola, Giordano, Halleran & Ciesla, P.C., Middletown, NJ, for defendant, Central Jersey Bank & Trust Co.

## OPINION

WOLFSON, United States Magistrate Judge.

Presently before the Court is the motion of defendant, Central Jersey Bank & Trust Co. ("Central Jersey"), seeking to compel the deposition of Kerry E. Higgins, Esq. ("Ms. Higgins"). Having considered the moving, opposition, and reply papers, and the oral arguments of counsel, the Court finds, for

the reasons set forth below, that defendant's motion shall be *granted.*

## BACKGROUND

Defendant, Central Jersey, was the executor and trustee of the Estate of Irene Lockwood Robertson ("the decedent"). While decedent had bequeathed a life interest in the Estate to her husband, she also named her granddaughter, the plaintiff Melissa Robertson, as a residuary beneficiary of the Estate.[1] The property was to be held in trust for her by Central Jersey until she reached the age of twenty-five years. The trust was created on January 23, 1984, and the most significant assets in the trust included shares of stock in Central Jersey, other miscellaneous stock, and a parcel of real property located at 62 Harvard Road in Fairhaven, New Jersey.

On or about February 29, 1988, Central Jersey had concluded the administration and management of the Estate and filed a complaint in action for settlement in the Probate Court of the State of New Jersey.[2] Since plaintiff was still a minor at the time, the court appointed Ms. Higgins *guardian ad litem* to represent plaintiff's residuary interests in the Estate.

As *guardian ad litem,* Ms. Higgins prepared a "report of counsel" for the Probate Court which addressed the significant transactions undertaken by Central Jersey during the administration of the Estate and identified the assets which comprised the corpus of the trust. Included in the report was a discussion concerning the propriety of certain decisions made by Central Jersey, including those regarding sale of the 62 Harvard Road property as well as the sales of Central Jersey Bank stock. According to the report, in June of 1988, Ms. Higgins met with the plaintiff's parents, Mr. & Mrs. Robertson, to review the accountings of the Estate. The parents had questioned both the stock and real estate transactions, expressing "extreme dissatisfaction" with Central Jersey's performance as trustee of the Estate.

In defending against the present action, Central Jersey now seeks to compel the deposition of Ms. Higgins. Central Jersey argues that the communications between Ms. Higgins and plaintiff's parents are relevant to the claims and defenses in this action. Specifically, defendant claims that the Robertsons' objection to the sale of Central Jersey stock in 1988 is inconsistent with the plaintiff's present claim that Central Jersey breached a fiduciary duty to the plaintiff by failing to diversify the stock holdings which comprised the trust.[3] Indeed, defendant believes that the deposition of Ms. Higgins may reveal that the plaintiff, through her parents, had consented to the retention of Central Jersey's stock.

Plaintiff does not dispute the relevancy of this information but argues that the attorney-client privilege protects these communications from discovery. Because Ms. Higgins is concerned that her deposition testimony might run afoul of the privilege, she has refused to be deposed. Thus, the issue before the Court is whether communications between a *guardian ad litem* and a minor's parents are protected by the attorney-client privilege. This Court holds that they are not.

## DISCUSSION

■ When jurisdiction is based on diversity, Rule 501 of the Federal Rules of Evidence requires this Court to examine state law in deciding questions of privilege. *See United Coal Co. v. Powell Constr. Co.,* 839 F.2d 958, 965 (3rd Cir.1988). Therefore, while New Jersey state and federal courts both recognize that the policy behind the privilege is to promote "full and frank communications between attorneys and their clients", *United Jersey Bank v. Wolosoff,* 196 N.J.Super. 553, 561, 483 A.2d 821 (App.Div. 1984) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981)); *see also In re Environ-*

---

1. The other residuary beneficiary was the Monmouth County Society for the Prevention of Cruelty to Animals which is not involved in this litigation.

2. Decedent's husband had died on August 2, 1985.

3. Plaintiff alleges that Central Jersey had violated its own trust management policies by investing too large a percentage of the trust's assets in a single stock—the stock of Central Jersey Bank & Trust Co.

708

*mental Ins. Declaratory Judgment Actions,* 259 N.J.Super. 308, 313, 612 A.2d 1338 (App. Div.1992), the application of the attorney-client privilege in this case will be determined by New Jersey law.

■ In New Jersey, the attorney-client privilege is well established and vigorously protected. *See In the Matter of Nackson,* 114 N.J. 527, 531–32, 555 A.2d 1101 (1989); *State v. Sanders,* 260 N.J.Super. 491, 497, 616 A.2d 1345 (App.Div.1992); *see also N.J.Evid.R.* 26; N.J.S.A. 2A:84A–20. Nevertheless, the attorney-client privilege is not absolute and it is to be strictly limited to the purposes for which it exists. *See Hansen v. Janitschek,* 31 N.J. 545, 158 A.2d 329 (1960); *State v. Humphreys,* 89 N.J.Super. 322, 325, 215 A.2d 32 (App.Div.1965); *see also Dry Branch Kaolin Co. v. Doe,* 263 N.J.Super. 325, 330, 622 A.2d 1320 (App.Div.1993). This is so because the attorney-client privilege advances secrecy and "runs counter to the fundamental theory of our judicial system that the fullest disclosure of the facts will best lead to the truth." *In re Selser,* 15 N.J. 393, 405, 105 A.2d 395 (1954); *see also Longo v. American Policyholders' Ins. Co.,* 181 N.J.Super. 87, 85–90, 436 A.2d 577 (Law Div.1981).

■ To be protected by the attorney-client privilege, the communication between attorney and client must be made "in professional confidence". *See N.J.Evid.R.* 26; *Coyle v. Estate of Simon,* 247 N.J.Super. 277, 282, 588 A.2d 1293 (App.Div.1991). Thus, the shield of secrecy is raised only with respect to "confidential communications made within the context of the strict relation of attorney and client." *Coyle,* 247 N.J.Super. at 282, 588 A.2d 1293. Therefore, the privilege will not extend to communications where the attorney is acting in a capacity other than as counsel. *See Metalsalts Corp. v. Weiss,* 76 N.J.Super. 291, 299, 184 A.2d 435 (Ch.Div. 1962) (privilege denied where attorney acted as investigator); *Newark Bd. of Ed. v. Newark Teachers Union Local 481, AFT, AFL–CIO,* 152 N.J.Super. 51, 62–63, 377 A.2d 765 (App.Div.1977) (privilege did not protect notes prepared by an attorney serving as a negotiating representative in a labor dispute); *see also Leonen v. Johns–Manville,*

135 F.R.D. 94, 98–99 (D.N.J.1990) (privilege did not protect the communications with in-house counsel relating to business rather than legal matters). Moreover, a communication between an attorney and client will not be privileged if the communication was made with the understanding that it would be imparted to third parties. *See United States v. Merrell,* 303 F.Supp. 490, 492–93 (N.D.N.Y. 1969); *see also Coyle,* 247 N.J.Super. at 282, 588 A.2d 1293.

Because Ms. Higgins, a lawyer, was appointed by the court as Melissa Robertson's *guardian ad litem,* rather than as her legal counsel, this case does not involve a typical attorney-client relationship. New Jersey has not yet addressed whether the attorney-client privilege should attach to the communications of a *guardian ad litem,* and few other jurisdictions have had the occasion to reach the question. The issue before the Court is therefore one of first impression.

■ The attorney-client privilege can only protect communications made to persons acting as legal counsel. *See Metalsalts Corp.,* 76 N.J.Super. at 298, 184 A.2d 435. Therefore, pivotal to the Court's resolution of this matter is whether Ms. Higgins, as *guardian ad litem,* also functioned as an attorney. Of course, simply because Ms. Higgins is an attorney does not define her relationship with either the plaintiff or her parents as that of attorney-client. Indeed, the *guardian ad litem* performs many functions, a number of which are distinct from the practice of law.

Since New Jersey does not have a specific statute outlining the role of the *guardian ad litem* in probate proceedings, or even the general role of a *guardian ad litem,* this Court must glean from other sources the functions traditionally associated with this position. The New Jersey adoption statutes and court rules are helpful in this regard.

■ A *guardian ad litem* is defined as "a qualified person, *not necessarily an attorney,* appointed . . . to represent the interests of the child." N.J.S.A. 9:3–38(e) (as defined in the New Jersey adoption statute) (emphasis added). From the wording of the statute, then, it is immediately apparent that a

*guardian ad litem*'s duties do not require legal training. While a *guardian ad litem* may be an attorney, and often is, *see* Gale B. Wilhelm, et al., *The Role of The Guardian Ad Litem and Probate Proceedings*, 65 Conn. B.J. 462, 466 (1992); Howard A. Davidson, *The Child's Right to be Heard and Represented in Judicial Proceedings*, 18 Pepp. L.Rev. 255, 260–62 (1991), that fact alone does not transform the *guardian ad litem* into the child's attorney. *See Ross v. Gadwah*, 131 N.H. 391, 394–95, 554 A.2d 1284, 1285 (1988) (holding that "the attorney-client privilege is incompatible with the [*guardian ad litem*'s] role as a party to and expert witness in custody proceedings"); *State v. Good*, 417 S.E.2d 643, 644–45 (S.C.Ct.App. 1992) (holding that a *guardian ad litem*'s testimony regarding communications made by minor defendant about criminal activity was not subject to any privilege); *see also* Edward Sokolnicki, Note, *The Attorney as Guardian Ad Litem for a Child in Connecticut*, 5 Conn.Prob.L.J. 237, 258 (1991); Davidson, *supra*, at 263–65. It is clear, therefore, that the *only* way for a *guardian ad litem* to have an attorney-client relationship with the child is if the guardian is a licensed lawyer who also provides legal services to the child.

Duties of a *guardian ad litem* may include interviewing persons with information relevant to the proceeding as well as interviewing the children and the parties involved, obtaining relevant documentary evidence, and obtaining the assistance of independent experts. *N.J.Ct.R.* 5:8B (rule governing appointment of *guardian ad litem* when custody or visitation is an issue); *see also Ross v. Gadwah*, 131 N.H. 391, 394, 554 A.2d 1284, 1285 (1988) (describing similar duties of *guardians ad litem* in New Hampshire); and Wilhelm et al., *supra*, at 467–68. Although an attorney may be well suited to perform these investigatory functions, these duties are related to information gathering and not the rendering of legal services.

Indeed, there is express allowance for the hiring of counsel. For example, in the event that a *guardian ad litem* requires legal advice in representing the child, he or she can seek leave of court to obtain the assistance of a lawyer for the child. *N.J.Ct.R.* 5:8B. Of course, if the *guardian ad litem* is an attorney, he or she can furnish legal advice. However, the New Jersey statute does not contemplate that the *guardian ad litem*'s duties include the proffer of legal advice. *N.J.Ct.R.* 5:8B.

The *guardian ad litem* makes an objective determination of what is in the best interests of the child. The court then uses its discretion in weighing the *guardian ad litem*'s recommendation. Tara Lea Muhlhauser, *From "Best" to "Better": The Interests of Children and the Role of a Guardian Ad Litem*, 66 N.D.L.Rev. 633, 643 (1990). This is in stark contrast to the traditional partisan role of legal counsel. In fact, *N.J.Ct.R.* 5:8B declares that "[t]he services rendered by a *guardian ad litem* shall be to the court on behalf of the child." The *guardian ad litem* who makes an objective conclusion from the results of his/her investigation which may or may not reflect the child's wishes assumes a role as an "agent of the court." *See* Wilhelm, *supra*, at 470; Sokolnicki, *supra*, at 246. Legal counsel would follow the directions of the child-client and present arguments in favor of the child's position.

As a result, Ms. Higgins will not be able to assert the attorney-client privilege unless she can show that she went beyond the duties of a *guardian ad litem* and acted as legal counsel. No such showing has been made.

With respect to the interview of plaintiff's parents, Ms. Higgins was only functioning in her capacity as *guardian ad litem* to the plaintiff, not as plaintiff's counsel. In furtherance of her investigatory duties, *see N.J.Ct.R.* 5:8B, Ms. Higgins interviewed the parents to obtain relevant information about the trust. That information was eventually incorporated into a publicly disclosed report of counsel. There is simply no indication that she provided any *legal* service directly or indirectly to the plaintiff through the interview. The Court concludes, therefore, that the relationship between plaintiff and Ms. Higgins was in the nature of *guardian ad litem*-minor, rather than attorney-client.

■| Since Ms. Higgins was not acting as plaintiff's lawyer, she was not providing legal representation to plaintiff's parents. Ms. Higgins was appointed to represent the best interests of the plaintiff in the Robertson Estate, not the interests of the parents. In fact, there is no indication that the parents had *any* personal interest in the Estate. Moreover, at least one court has held that an attorney-client relationship does not exist between a court appointed *guardian ad litem* and a parent by virtue of the court's appointment of the guardian. Because plaintiff's parents and Ms. Higgins did not enjoy an attorney-client relationship, the privilege cannot attach to any communications made between them. *Gerber v. Peters*, 584 A.2d 605, 607 (Me.1990).

■| Plaintiff relies on *State v. Davis*, 116 N.J. 341, 361, 561 A.2d 1082 (1989), arguing that the parents are necessary intermediaries through whom communications by the *guardian ad litem* must be made. However, there has been no indication that the parents were acting as intermediaries or agents to the plaintiff. Rather, it appears that the parents were merely assisting Ms. Higgins in her investigation by providing information about the administration of the trust. However, even assuming that the parents were acting as intermediaries with respect to the communications made to Ms. Higgins, that role would not necessarily give rise to an attorney-client relationship between the plaintiff and the *guardian ad litem*.[4]

■| Notwithstanding the fact that no attorney-client relationship existed between Ms. Higgins and the parents, of equal significance is the fact that the communications between plaintiff's parents and Ms. Higgins were not made with the expectation of confidentiality. "The communication made in the course of a relationship between lawyer and client shall be presumed to have been made in professional confidence *unless* knowingly made within the hearing of some person whose presence nullifies the privilege."

N.J.Evid.R. 26; N.J.S.A. 2A:84A–20 (emphasis added); *see also Coyle v. Estate of Simon*, 247 N.J.Super. 277, 282, 588 A.2d 1293 (App. Div.1991). In this case, when the parents gave their statements to Ms. Higgins, they were aware or certainly should have been aware, that, as *guardian ad litem*, Ms. Higgins would be preparing a report for submission to the Probate Court. As such, plaintiff's parents could hardly have expected their statements to remain confidential since the general public would be privy to their published communications in the report of counsel. Therefore, even assuming that the requisite attorney-client relationship existed, the privilege could not attach to the parents' statements because they were not made with the expectation of confidentiality. *See Coyle*, 247 N.J.Super. at 282, 588 A.2d 1293.

■| If there remains any question as to whether the parents' communications may be protected by the attorney-client privilege, waiver provides the definitive answer. It is clear that disclosure of a confidential communication, with the client's permission, will waive the attorney-client privilege. *Sicpa North American, Inc. v. Donaldson Enters., Inc.*, 179 N.J.Super. 56, 61, 430 A.2d 262 (Law Div.1981). In this case, the report of counsel, which incorporated the parents' communications, has been publicly disclosed. Moreover, the defendant has a copy of the report. Because of such disclosure, the privilege has been lost with respect to the communications. *See Sicpa*, 179 N.J.Super. at 61–62, 430 A.2d 262; *see also Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3rd Cir.1991) (" '[O]nce a client has revealed privileged information to a third party, the basic justification for the privilege no longer applies ...' ") (quoting Comment, *Stuffing the Rabbit Back into the Hat: Limited Waiver of the Attorney–Client Privilege in an Administrative Agency Investigation*, 130 U.Pa.L.Rev. 1198, 1207 (1982)).

---

4. If the *guardian ad litem* were providing legal representation to the plaintiff, which she was not, then the parents might be considered necessary intermediaries. *See De Los Santos v. Superior Court of Los Angeles County*, 27 Cal.3d 677,

682, 166 Cal.Rptr. 172, 613 P.2d 233, 236 (Cal. 1980) (holding that parents' communications to child plaintiff to assist child's attorney in preparing answers to interrogatories were protected by attorney-client privilege).

Finally, because this Court has found that the attorney-client privilege will not protect the communications between Ms. Higgins and plaintiff's parents, I need not reach the issue of whether the privilege might be pierced by a "legitimate need" for the information, "a showing of relevance and materiality of that [information]," and an inability to obtain it from a "less intrusive source." *See In re Kozlov*, 79 N.J. 232, 243–44, 398 A.2d 882 (1979). However, the Court will take this opportunity to note that plaintiff's contention that the same information defendant seeks from Ms. Higgins is available from plaintiff's father is clearly without merit. As defendant points out, plaintiff and plaintiff's parents have already refused to waive the privilege in connection with Ms. Higgins' deposition. Logic suggests that plaintiff's father would assert the attorney-client privilege at his own deposition.

Therefore, because 1) Ms. Higgins was acting as an investigator in her capacity as *guardian ad litem,* rather than as an attorney, 2) plaintiff's parents did not enjoy an attorney-client relationship with Ms. Higgins, 3) communications between plaintiff's parents and Ms. Higgins were not made with the expectation of confidentiality, and 4) any privilege that might once have been asserted was waived by public disclosure, the attorney-client privilege is inapplicable to this matter. Defendant may therefore depose Ms. Higgins with respect to the communications between her and plaintiff's parents.