**Frank AUGENTI, Jr., Plaintiff,**

v.

**Gifford R. CAPPELLINI, Joseph Alexander, Sr., Joseph Alexander, Jr., Frank Augenti, Sr., Margaret Augenti, Marie Benson, Michael Benson, John Richard Benson, Tony Augenti, Blanche "Augenti", Robert Capparelli, Paul Litchkowski, Carl Kollar, Patricia Hartman, Daniel Schnae, John Does I Through IV, being four unknown named Defendants whose identities are unknown, Howie "Hoe", an individual whose last name is unknown, Defendants.**

Civ. A. No. 79–222.

United States District Court,
M. D. Pennsylvania.

Aug. 31, 1979.

On Motion For Discovery Oct. 29, 1979.

Bruce S. Miller, Hazleton, Pa., Jeremiah S. Gutman, New York City, for plaintiff.

Cody H. Brooks and Lawrence M. Ludwig, Scranton, Pa., for Gifford R. Cappellini.

Arthur L. Piccone and Patrick E. Dougherty, Wilkes-Barre, Pa., for Augenti's, Benson's, Litchkowski and Kollar.

James M. Reinert, Shavertown, Pa., for Robert N. Capparelli.

Allan G. Apfel, Great Neck, N. Y., Paul A. McGlone, Scranton, Pa., John Adam DiPietro, Wilkes-Barre, Pa., for third-party plaintiff Gifford R. Cappellini.

Francis P. Burns, Pittston, Pa., for third-party defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

This action is before the Court on Defendant Cappellini's Motion for Summary Judgment pursuant to F.R.C.Proc. 56. Defendant maintains that he is entitled to summary judgment, (1) on Plaintiff's claim brought under 42 U.S.C. § 1983 because jurisdiction under this statutory provision is based solely on the involvement of John Richard Benson, and Defendant contends that this is not sufficient to meet state action requirement of § 1983; (2) on Plaintiff's § 1985 claim because the Plaintiffs have failed to show that the Defendants Augenti or their Attorney, Gifford Cappellini had the requisite class-based invidiously

discriminatory animus necessary to show a violation of that Section and (3) on all other claims brought against Gifford Cappellini because his actions were taken in good faith reliance on the established statutes and procedures of Pennsylvania law. After consideration of the Constitutional questions raised and the many issues involved, we find that a number of factual issues remained disputed, and as a result summary judgment may not issue.

Frank Augenti, Jr., the Plaintiff in this suit, is a member, adherent and believer of the Unification Church, an international religious organization. He brought this action against his parents, their attorney and numerous other individuals who were involved in an effort to "deprogram" him, for violations of Sections 1983, 1985(3) and 1986 of the Civil Rights Acts, seeking both injunctive and compensatory relief. Jurisdiction is asserted under 28 U.S.C. §§ 1331(a), 1332, 1343(1), (3) and (4) and 42 U.S.C. 1983 and 1985. Pendant jurisdiction is alleged over the non-federal tort claims of assault, false arrest, false imprisonment, and malicious use of process made in Counts Three, Four and Five of the Complaint.

The factual background of this action is as follows: Frank Augenti, Junior, the Plaintiff, was residing in Ohio, and a practicing member of the Unification Church. He traveled to New York City for the observance of a religious holiday on January 1, 1978. He contacted his parents at their home in Nanticoke, Pennsylvania, and arranged to visit them on his return trip, since he would travel near their home on his way. When he arrived at their home on January 2, 1978 he was greeted by his parents and several of the other named Defendants and co-conspirators. John Richard Benson, his brother-in-law, and also a member of a local police force, handed him a copy of an Order of the Court of Common Pleas of Luzerne County, which appointed his parents, Frank Augenti, Sr. and Margaret Augenti as temporary guardians and gave them power to take him into custody, to have him treated and to take whatever steps were necessary to maintain Plaintiff in their custody. He was then held against his will at the Augenti home and in various other locations in the Wilkes-Barre, Pennsylvania area, and then transported to a location in the State of Arizona, from which he fled on February 8, 1978.

During that time, it is alleged that Defendants and their co-conspirators held Plaintiff against his will through the use of force and threats of force and that Defendants and their co-conspirators attempted to coerce Plaintiff into renouncing and giving up his religious beliefs, practices and associations. It is alleged that these individuals conspired to prevent Plaintiff from freely associating with other members of the church, to prevent and intimidate him from traveling among and between the several states, to prevent him from freely discussing and exchanging his religious beliefs and ideas and to prevent Plaintiff from freely exercising his religious beliefs. As a result of these actions, Plaintiff complains that he has suffered physical injury, mental and emotional distress, and damage to his reputation. He further complains that he has been intentionally and maliciously wrongfully denied the equal protection of the laws and the enjoyment of his rights, privileges and immunities as a citizen of the United States and of the State of New York, including, but not limited to, freedom of speech, freedom of travel, freedom of association, freedom of assembly, freedom of religion and the right to counsel.

Defendant's Motion for Summary Judgment is brought pursuant to F.R.C.Proc. 56. Under this rule, the judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

▆▆▆ Defendant first attacks Plaintiff's claim brought under § 1983.[1] To frame a

1. 42 U.S.C. § 1983 reads as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

cause of action under 42 U.S.C. § 1983, the Plaintiff must allege facts which show the Defendants have acted under color of state law or authority and have deprived the Plaintiff of a right, privilege or immunity secured by the Constitution and the laws of the United States. *Basista v. Weir*, 340 F.2d 74, 79 (3d Cir. 1965). Misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368. Where the Defendants are private individuals, private action may be deemed state action because the individuals willfully participate in joint activity with the state or its agents. The test of whether a joint participation or conspiracy exists is whether the facts alleged demonstrate that the private individual and the public official acted with a common understanding or "meeting of the minds" to deprive the Plaintiff of his constitutionally protected rights. *See Adickes v. S. H. Kress and Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 26 L.Ed.2d 142.

▮ Plaintiff alleges that Defendant John Richard Benson was in uniform, armed and acting as a police officer when he served upon Plaintiff the Order of temporary guardianship, and thereafter, while acting in concert with others to prevent Plaintiff's escape, he acted with the badge and authority of a police officer. Plaintiff contends that this conduct was done under color of state laws, custom and usage, and by and through the express approval of Defendant Benson, a police officer in the Commonwealth wherein the Defendant was wrongfully detained and that Plaintiff therefore has a cause of action for violation of § 1983. Defendant first attacks Benson's participation in the events of January 2 and 3, 1977 as a basis for a claim under § 1983 on the basis that his actions were not under color of state law. We must reject this contention because it is alleged that Benson

handed the order of temporary guardianship to the Plaintiff, while dressed in the uniform of a police officer, that he warned him not to do anything "drastic" in order to escape from custody and that he accompanied the Plaintiff and others when Plaintiff was transported from his parents' home to a location in Wilkes-Barre, serving as a guard to prevent Plaintiff from attempting to escape. In so doing, Defendant was apparently acting in his official capacity as a police officer.

Defendant contends that these actions were not an abuse of power and could easily have been done by any person, police officer or civilian. However, the fact remains that Benson was in his uniform and performed a function of serving the Court Order on Augenti, that could have been an official act. This particular issue, whether or not Benson was acting within his authority is not dispositive of the question of whether he was acting under color of law. If he was acting within his authority as a police officer, he was acting under color of law. If his actions were an abuse of the power he possessed by virtue of state law, then under the *Classic* principle, he was acting "under color of state law" for purposes of a § 1983 action.

▮ Defendant's next contention is that if Benson was acting as a quasi-judicial officer and acting pursuant to a valid Court Order, then he is immune from suit. Police officers do enjoy a qualified immunity for acts done in the performance of their official functions. This immunity extends only to acts taken in good faith and upon a reasonable belief. *Pierson v. Ray*, 386 U.S. at 587, 87 S.Ct. 1213. Plaintiff alleges that Benson's actions in serving the Court Order and in enforcing it by maintaining surveillance around the Augenti home, and accompanying the group that transported Frank Augenti so that he could not escape, were done with malice, and as a part of the conspiracy to deprive him of his rights.

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper proceeding for redress.

Thus there exists a factual dispute as to whether Benson's actions were done in good faith and upon a reasonable belief. If Plaintiff can show that Benson was acting with malice, as alleged, then his § 1983 claim will not be barred by the defense of official immunity. Therefore, Defendant Cappellini's Motion for Summary Judgment on the § 1983 claim must be denied.

Summary judgment is also sought by Defendant Cappellini on Plaintiff's § 1985(3) claim, alleging that Plaintiff has failed to show that the Defendants Augenti or Defendant Cappellini had the requisite class-based invidiously discriminatory animus necessary to show a violation of 42 U.S.C. § 1985.

■ In order to recover under § 1985(3), Plaintiff must establish the following elements: (1) a conspiracy to go in disguise on the highway or on the premises of another; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal protection and immunities under the laws; (3) an overt act in furtherance of the conspiracy resulting in; (4) injury to the person or to property or in deprivation of any of the rights or privileges of a citizen. *Griffin v. Breckinridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338.[2] To avoid transforming this section into a general Federal Tort Law, the Supreme Court in *Griffin* construed the second element as requiring a class-based animus akin to racial discrimination:

"the language requiring intent to deprive of equal protection or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102, 91 S.Ct. at 1798.

Defendant contends that the fact that Plaintiff's parents were motivated solely by parental concern for their son, and were acting to further his physical and mental health, demonstrates that they lacked the necessary "invidiously discriminatory animus," and therefore Plaintiff has no cause of action under § 1985(3).

■ However, Plaintiff's claim is that the alleged conspiracy is directed against him as a member of the Unification Church, and that church members comprise the class involved. Several cases interpreting the legislative history of § 1985(3) have determined that the protection of the provision does extend to religious groups. *See, Mandelkorn v. Patrick*, 359 F.Supp. 692, 697 (D.D.C.1973); *Jackson v. Associated Hospital Service of Philadelphia*, 414 F.Supp. 315 (E.D.Pa.1976), aff'd 549 F.2d 795 (3rd Cir. 1977); and *Baer v. Baer*, D.C., 450 F.Supp. 481. Therefore, if Plaintiff can establish this allegation at trial, he may have a claim under § 1985. Defendant's contention that the state of the record thus far establishes the complete lack of "class-based invidiously discriminatory animus" puts the question of Defendants' motives at issue, and therefore this claim is not ripe for disposition by summary judgment.

■ Defendant Cappellini's final basis in support of his Motion for Summary Judgment is that all of his actions were pursuant to the custody order, which he believed was properly obtained and effective. Again, Defendant claims that the Plaintiff has failed to raise any issues of material fact. Defendant points out that the custody order was obtained in conformance with proper Pennsylvania procedure for obtaining such an order. Plaintiff does not dispute that fact. But Plaintiff alleges that the Defend-

**2.** 42 U.S.C. § 1985(3) reads in relevant part:
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [and] . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to

be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

ant and his parents deceived the court in order to obtain the order. He also alleges that Cappellini transported him to Arizona against his will, and physically restrained him, and did various other acts in furtherance of the conspiracy to deprive Plaintiff of his rights. Whether or not these actions were in good faith and in conformance with a validly obtained order is the very issue to be decided and is still in dispute. Therefore, Defendant's Motion for Summary Judgment on this basis must also be denied.

### ON MOTION FOR DISCOVERY

The decision of the Plaintiff in this case to join the Unification Church was one which disappointed and disturbed his parents and his family. As a result, in early January of 1978 his parents and a number of the Defendants involved in this suit "spirited him away" and tried to prevent his return to the church. In this endeavor he was moved about the country and eventually broke from his "captors", and initially in February of 1978 went to Columbus, Ohio. While there he went to the offices of the American Civil Liberties Union (ACLU) where he saw "one person", to whom he talked and asked "what I can do to gain any type of legal protection to keep such an event from happening again." He asked if he could "change my name or go somewhere else" and was advised that "I didn't have to do anything that extreme, just find a lawyer to defend my position."

There were apparently some efforts by the ACLU to help Plaintiff find a lawyer. These efforts were not successful however, and upon his return to New York City in May of 1978 the Plaintiff finally did meet with a lawyer. (Apparently counsel for the Unification Church).[1] Shortly after his first meeting at the offices of the ACLU in Ohio, the Plaintiff began to commit to writing his recollections or notes on the events in which he became involved with his parents and their assistants. These notes[2] are

1. The word "apparently" prefaces much of the recital of facts herein since much of the pleadings, motions, and affidavits are confusing and subject to proof at trial.

now the subject of a Motion for Discovery by the Defendant Cappellini, who has also started a third-party proceeding in this same matter. Plaintiff declines to produce these "notes" because he argues they were made in contemplation of litigation and thus are exempt from discovery under Fed. R.C.P. 26(b)(3). Defendant Cappellini argues he is entitled to the notes under the same rule (and Rule 34) because he has "a substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means". Thus the framework of the issue here considered.

 Traditionally, the work product of a lawyer in preparation for trial was not subject to discovery and Rule 26(b)(3) extends that immunity to work products not only of lawyers, but to documents prepared "*by or for* a party." In discussion of this Rule in Wright and Miller, Fed.Practice & Procedure (§ 2204, et seq.) it is pointed out that three requisites must exist to call the Rule into play.

1. The material must be documents and tangible things.

2. The material must have been prepared in anticipation of litigation or for trial.

3. The material must have been prepared by or for a party or by or for the party's representative.

Obviously in this case, requisites one and three are met; the dispute arises in applying the second requisite to the facts before us.

 We don't have much difficulty in concluding that, at the time the notes were made, Plaintiff, at least, had in mind some type of legal action. The fact that the action was not started until many months later is not totally destructive of the protection or controlling in deciding the issue. *Arney v. Hormel Co.*, 53 F.R.D. 179

2. These are the notes generally referred to in counsel's language as "prepared at the request of the ACLU."

(D.Minn.1971); *Garfinkle v. Arcata,* 64 F.R.D. 688 (S.D.N.Y.1974). But it is much harder to conclude the Plaintiff had in mind the specific litigation here before us—or the responsive third-party litigation of the Defendant Cappellini.

As pointed out in Wright and Miller, supra at page 212, et seq.—this "work product rule" is often spoken of as creating a "privilege" when in reality it is more accurate to say that it gives a "qualified immunity from discovery." For indeed it must give way when the exigencies of the case are such that the statements involved were made at such a time and under such circumstances that they become "unique catalysts in the search for truth". *Johnson v. Ford,* 35 F.R.D. 347 (D.Colo.1964), *Southern Railway v. Campell,* (C.A.5th 1962) 309 F.2d 569; *McDougall v. Dunn,* (C.A.4th 1972), 468 F.2d 468. These latter cases are not factually akin to the matter here considered, but they underscore the concept that notations or statements made immediately after an event are often more reliable than recollections of a later date, and sometimes in conflict with the same makers latter day allegations. In any event, the maker should not be allowed to "run away" from such statements without explanation.

■ Here we have a situation where the Plaintiff originally conceived some action to prevent others from interfering with his choice of religious conduct and affiliation, whereas now he is embroiled in a full blown lawsuit for compensatory damages, punitive damages, injunctive relief and attorneys' fees, as well as a countersuit alleging conspiracy, libel, champerty, and a variety of other claims. Additionally there are assertions (and indications in depositions) of deviations between Plaintiff's prior statements and his allegations in the Complaint.

Under all these conditions therefore, it is the finding of this court that a compelling need has been shown for the production of the notes referred to herein—and a further finding that such production may substantially aid in the search for the truth in this case. Accordingly, we will order the Plaintiff to produce such statements for the benefit of Defendant Cappellini's inspection and copying (See Rule 34 F.R.C.P.).