**MASON C. DAY EXCAVATING, INC.,**
**Mason C. Day and Dorothy P.**
**Day, Plaintiffs,**

**v.**

**LUMBERMENS MUTUAL CASUALTY**
**COMPANY, Defendant.**

**Civ. A. No. 1:90CV00476.**

United States District Court,
M.D. North Carolina,
Durham Division.

Aug. 24, 1992.

Grover Gray Wilson, William F. Maready, Elizabeth Horton, Petree Stockton & Robinson, Winston–Salem, N.C., for plaintiffs.

James Avery Roberts, III, Maupin Taylor Ellis & Adams, P.A., Raleigh, N.C., John E. Bugg, Durham, N.C., Michael C. Lord,

Daniel Kent Bryson, Maupin Taylor Ellis & Adams, P.A., Raleigh, N.C., for Lumbermens Mut. Cas. Co.

W. Thompson Comerford, Jr., Petree Stockton & Robinson, Winston–Salem, N.C., for G. Gray Wilson.

### ORDER

TILLEY, District Judge.

Plaintiffs and defendant appeal the Magistrate Judge's Order of May 1, 1992 denying defendant's motion to compel production of audiotapes and transcriptions and ordering plaintiffs to pay defendant reasonable costs as a sanction. Both parties filed an appeal pursuant to Fed.R.Civ.P. 72(a) claiming that part of the Order which was adverse to them was clearly erroneous or contrary to law.

 The Court has reviewed the Order pursuant to Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A) and finds nothing therein to be clearly erroneous or contrary to law. In so affirming, the Court also denies defendant's request for an *in camera* review of the audiotapes. Defendant had previously made a conclusory request for an *in camera* review without detailing the necessity therefor. Now, it states that an *in camera* review would confirm the factual nature of the audiotapes. This argument would have been better made by a request for reconsideration. However, this would not be efficient in this case.

The claimed privilege or work product protection here is not of such a nature that a review of the documents is necessary to determine if part of the document is privileged or protected and part of it is not. Defendant does not either allege or make a showing that plaintiff Mason Day's affidavit setting out the circumstances under which the audiotapes were made and the content of the audiotapes is suspect. Its sole argument is that an *in camera* inspection will reveal that the audiotapes only contain Mason C. Day's factual observations of defendant's completion of the projects and do not contain observations pertaining to potential litigation or request for legal advice.

 A district court has discretion in determining whether to conduct an *in camera* review of documents claimed to be privileged, protected or otherwise entitled to confidentiality. *Silets v. U.S. Dept. of Justice*, 945 F.2d 227 (7th Cir.1991). *See also Vaughn v. U.S.*, 936 F.2d 862, 868 (6th Cir.1991). The Court must have some bases or grounds for conducting an *in camera* review. *Id.;* and *see e.g. Ferguson v. Lurie*, 139 F.R.D. 362 (N.D.Ill.1991). Defendant does not assert that plaintiff's affidavit describing the content of the audiotapes may be made in bad faith or is inaccurate or otherwise suspect. The affidavit indicates that the audiotapes are all of the same general nature and consist of Mr. Day's personal observations over a period of months. There is no reason to believe that the nature of his observations one day would be different than any other day or that the content of his observations would vary from one day to the other. This is unlike a situation where part of the document might contain attorney-client information or opinion work product information and the other part of the document may not. The Magistrate Judge determined that the facts observed were by their nature attorney-client communication and also constituted work product involving *confidential* factual observations. Defendant fails to present sufficient justification for conducting an *in camera* inspection of the audiotapes and their transcripts.

IT IS THEREFORE ORDERED that the Magistrate Judge's Order of May 1, 1992 be, and the same hereby is, affirmed.

IT IS FURTHER ORDERED that defendant's request that the audiotapes and their transcripts be examined *in camera* is denied.

### ORDER OF MAGISTRATE

ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendant's Fed.R.Civ.P. 37 motion to compel the production of certain audiotapes and transcriptions made therefrom. In its First Set of Interrogatories and Requests

for Documents, defendant requests the identification and production of any statements which plaintiffs made concerning the controversy. Plaintiffs object on grounds of attorney-client privilege and work product protection to producing the audiotapes (and transcriptions) made by plaintiff Mason C. Day concerning his observations at two road construction projects. Defendant retorts that the tapes and transcriptions are not entitled to any protection, but even if they are deemed work product pursuant to Fed.R.Civ.P. 26(b)(3), then they should be produced because defendant has a substantial need for them. Defendant also contends that plaintiffs have waived their right to object to the motion to compel because they made a general, unspecified objection to producing the documents.

This action arises out of highway construction work under a contract which the corporate plaintiff had with the North Carolina Department of Transportation. Defendant provided the performance bonds for the corporate plaintiff. Because Day Excavating, Inc. could not finish the projects, defendant undertook to finish them, pursuant to the bonds, some time in August, 1987. Plaintiffs allege that defendant promised that the cost of completion would not exceed $3 million for the projects but instead incurred costs exceeding $9 million. Plaintiffs have brought this action for declaratory relief, breach of contract, breach of fiduciary duty, fraud and negligent misrepresentation.

Plaintiffs have submitted an affidavit and correspondence between counsel in support of their position that the transcriptions are privileged and/or subject to work product protection. Plaintiffs show that several weeks after the plaintiff corporation assigned the two highway construction projects to defendant, plaintiff Mason C. Day (President of Day Excavating) became suspicious of defendant's efforts. Plaintiff Day thought he saw a pattern wherein defendant used large amounts of personnel and equipment but accomplished little. Furthermore, his own company was not being utilized as defendant had promised. Mr. Day contacted his attorney and expressed these concerns. The attorney instructed Mr. Day to tape-record his observations of any problems at the work sites because a lawsuit might arise out of the assignment of the projects to defendant. From mid-September 1987 through February 1988, plaintiff Mason Day recorded his observations and impressions. He turned these tapes over to the attorney. The tapes were transcribed. Mr. Day has not seen these tapes since that time nor has he read any transcripts made from them.

Attorney correspondence indicates that plaintiffs claim that the transcripts include Mr. Day's mental impressions and opinions, in addition to his factual observations. Only plaintiffs' attorney has reviewed the tapes and transcripts.

Defendant does not present contrary facts but does complain that at his deposition, Mr. Day had little substantial recollection of a number of events and documents involved in this action. Mr. Day's lack of recollection encompasses the observations which are recorded on the audiotapes. Defendant points out that the contractor it hired to complete the projects compiled numerous personal logs concerning events at the projects. It argues that these records are no different than plaintiff's personal observations at the job sites. Therefore, defendant concludes that because it produced its daily logs, it is only fair that plaintiff Mason Day produce his. Plaintiffs retort that the attorney-client privilege should not be deemed inapplicable merely because Mr. Day made his observations on audiotapes as opposed to witnessing the events and then visiting the attorney to relate them.

## *Work Product*

Defendant's claim, that the tape recordings and transcriptions are not work product, is not convincing. In matters involving work product protection, as opposed to attorney-client privilege, federal courts apply federal law, even in diversity cases. *Leonen v. Johns–Manville*, 135 F.R.D. 94, 96 (D.N.J.1990). Work product protection is memorialized in Fed.R.Civ.P. 26(b)(3). In order to come within its ambit, the material must constitute (1) documents

or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for the party or the party's representative. *Pete Rinaldi's Fast Foods v. Great American Ins.*, 123 F.R.D. 198, 201 (M.D.N.C. 1988).

■ In the instant case, it is clear that the documents in question were prepared in anticipation of litigation because plaintiffs were fearful that defendant may have been defrauding them. Furthermore, they were prepared by one of the plaintiffs at his attorney's request. Losing the main argument, defendant relies on the exception to work product protection contained in Rule 26(b)(3). It claims entitlement to the audiotapes and transcriptions because it "has substantial need of the materials [in order to prepare its case] and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). As proof, defendant shows that at plaintiff Mason Day's deposition, he lacked recollection of the events and documents in the case.

■ When a party attempts to pierce the work product protection by relying on the substantial need exception, it bears the burden of proof and persuasion. *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 689 (E.D.Pa.1986); *Thill Securities Corp. v. New York Stock Exchange*, 57 F.R.D. 133, 138 (E.D.Wis.1972). Defendant fails to meet this burden. Substantial need can be demonstrated by showing that an important witness, who gave a contemporaneous account of the events, now lacks sufficient memory in order to be a useful witness. *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 480–81 (M.D.N.C. 1990). This is because contemporaneous statements are by their nature unique and often difficult to duplicate or find a substantial equivalent. However, the mere fact that the work product is comprised of

contemporaneous statements does not in all events answer the question as to whether there is a substantial need for the documents. Thus, where one party has its own contemporaneous statements from witnesses, it will have difficulty establishing a substantial need for the opposing party's contemporaneous statements and a court need not compel production. *In re Thompson*, 624 F.2d 17 (5th Cir.1980).

■ In the instant case, defendant has only shown that it cannot obtain Mr. Day's contemporaneous recollection of events in 1987 and 1988 because he now has a faulty memory. However, this falls far short of showing that defendant has a substantial need for the documents or that it cannot obtain the substantial equivalent from other sources. First, defendant itself has stated that it made daily notes of the events that transpired on the construction project. Therefore, defendant has its own contemporaneous statements of the events which occurred and fails to show they are not the substantial equivalent to Mr. Day's recordings. Moreover, defendant even fails to show a substantial need for the documents in that plaintiff Mason Day's observations of daily events are relevant and necessary to this action. In some situations substantial need may be demonstrated on grounds that prior statements or past recollections are important for purposes of impeachment so as to prevent fraud or misuse of the court. *Augenti v. Cappellini*, 84 F.R.D. 73 (M.D.Pa.1979); *but see Breedlove v. Beech Aircraft Corp.*, 57 F.R.D. 202 (N.D.Miss.1972)—(mere general need for impeachment cross-examination is not a special circumstance). Defendant fails to prove that such a situation exists in this case.

■ Defendant's request for the audiotapes and transcriptions shall be denied for the above reasons.[1] However, because the

---

**1.** A further reason for denying part of defendant's request for the work product is that some of it may well contain plaintiff Mason Day's mental impressions. In the Fourth Circuit, an attorney's or his agent's mental impressions are entitled to absolute protection. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir.1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); 8 Wright & Miller, *Federal Practice and Procedure* § 2026 (Supp.1992). That part of the audiotapes and transcriptions which contain mental impressions and conclusions could not be conveyed to defendant in any event.

denial is based on defendant's failure to meet its burden, a matter which could possibly be corrected, the Court will go on to consider whether to sustain plaintiffs' additional claim of attorney-client privilege.

### Attorney–Client Privilege

Because this case arises under this Court's diversity of citizenship jurisdiction, Rule 501 of the Federal Rules of Evidence directs the Court to look to state law in order to decide questions of attorney-client privilege. *Leonen v. Johns–Manville*, 135 F.R.D. at 98. In the instant case, North Carolina law governs the attorney-client issue. In North Carolina, the privilege exists if:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a property purpose although litigation need not be contemplated and (5) the client has not waived the privilege. 1 Stansbury, *supra* at § 62.

*State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981).

A review of North Carolina case law does not disclose a case precisely deciding the issue before the Court. However, the elements of the North Carolina attorney-client privilege are similar to the attorney-client privilege recognized under federal common law. *Liggett Group v. Brown & Williamson Tobacco Corp.*, 116 F.R.D. 205, 210 (M.D.N.C.1986). Therefore, the Court will also consult federal law to the extent it is not inconsistent with state law.

 Defendant first argues that plaintiffs' assertion of the attorney-client privilege is a mere sham in order to keep the transcriptions from defendant. It contends the transcriptions should not be treated any differently than the daily logs of its own contractor.

 Defendant is correct that a document, which is not privileged in the hands of the client, will not be imbued with the privilege merely because the document is handed over to the attorney. *Gould, Inc. v. Mitsui Min. & Smelting Co., Ltd.*, 825 F.2d 676, 679–80 (2d Cir.1987). This is because the protection of the work product doctrine only extends to the communication itself and not the facts which make up that communication. *Leonen v. Johns–Manville*, 135 F.R.D. at 98. Indeed, the facts which are contained in the communication may be discovered by other means but this does not affect the privilege which still attaches to the communication made to the attorney. *In re Federal Grand Jury Proceedings, 89–10 (MIA)*, 938 F.2d 1578 (11th Cir.1991). It is the context in which the communication is made rather than the content of the communication which is important. *Id.* Thus, the most vital aspect of the attorney-client privilege is the intention that the communication itself be kept confidential and be made for the purpose of obtaining legal advice. *U.S. v. Rockwell Intern.*, 897 F.2d 1255, 1264 (3d Cir.1990); *Hartsell v. Hartsell*, 99 N.C.App. 380, 393 S.E.2d 570 (1990), *aff'd*, 328 N.C. 729, 403 S.E.2d 307 (1991); *Dobias v. White*, 240 N.C. 680, 83 S.E.2d 785 (1954). This factor distinguishes Mr. Day's recording of daily events from the daily reports prepared by defendant's contractor.

The recording of daily observations and events by defendant's contractor is markedly different than the same observations made by Mr. Day. Defendant's contractor made daily logs as part of its ongoing business operations. They were not intended to be confidential nor made for the purpose of obtaining legal advice. Nor were they made in a context where confidentiality would be assumed. Mr. Day, on the other hand, only made his observations at the behest of his attorney and for the sole purpose of obtaining legal advice. The communication need not have been made in contemplation of a lawsuit in order to receive attorney-client privilege protection. 1 Henry Brandis, Jr., *North Carolina Evidence* § 62, at 301 (3d Ed.1988); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 462 (N.D.Ill.1990)—(federal law). The daily logs made by defendant's contractor were

made purely for business purposes and not for the purpose of obtaining legal services or advice. Nor was any effort made to insure that the daily logs would be confidential. Therefore, the Court finds that plaintiff's president's preparation of daily logs or recordation of events at the construction projects did not arise out of a business purpose but instead emanated from a desire to obtain legal services and in that regard was reasonably intended to be confidential.

 Defendant next contends that the Court should disallow a claim of attorney-client privilege because plaintiff Mason Day's daily logs merely record his observations which cannot constitute confidential information. Plaintiffs counter by pointing out that the recordings include Mr. Day's thoughts, opinions and mental impressions.

As stated previously, the attorney-client privilege will not protect information which is not confidential in the hands of the client. Defendant contends that the communication of a person's observations is pure factual information which can never be privileged. The answer to the underlying question is not quite so simple. Its citation of *Spell v. McDaniel*, 591 F.Supp. 1090 (E.D.N.C.1984), *aff'd in part and vacated on other grounds*, 824 F.2d 1380 (4th Cir.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988), somewhat misses the mark. That case involved the release of law enforcement investigative reports. Such reports do contain personal observations and are confidential. However, the reports did not implicate an attorney-client privilege. Nor did the court infer that factual observations can never be the subject of a confidentiality privilege.

 In some instances, information communicated to the attorney may be so completely factual or otherwise implicitly non-confidential that the client's communication of the information to the attorney will not give rise to an attorney-client privilege. Thus, in *Zoller v. Conoco, Inc.*, 137 F.R.D. 9 (W.D.La.1991), the court held that photographs taken of the site of the personal injury only conveyed information about the appearance of the site on a particular day which could not be in any way deemed confidential in order to be covered by the privilege. And, in *Bio–Rad Laboratories, Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116 (N.D.Cal.1990), the court found that non-confidential technical data provided to the attorney did not involve privileged information and, therefore, communicating it to the attorney did not give rise to an attorney-client privilege covering it.

 On the other hand, a person's recording or noting his observation of events, although mainly consisting of a recordation of facts, usually includes some mental impressions, selection or conclusions, and, therefore, will be granted attorney-client protection. Nor is the privilege inapplicable merely because the client records his observations at the time of the event and later gives the recording to the attorney where, as here, the recording was done at the direction of the attorney and the other elements of the attorney-client privilege are met. It is not just the circumstances of the observation, but also the circumstances of the recordation which are important for purposes of the attorney-client privilege. *See Solomon v. Scientific American, Inc.*, 125 F.R.D. 34 (S.D.N.Y.1988); and *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596 (M.D.Fla.1990).

In *Solomon v. Scientific American, Inc.*, 125 F.R.D. 34, the court, in a situation similar to the instant case, provided attorney-client protection to a client's letter to his attorney summarizing the events that had taken place which had led to the initiation of the lawsuit. Even though the attorney used this information to write a letter to defendants, and undoubtedly disclosed some of the facts contained in the client's letter, the attorney never disclosed the actual communication made by the client nor indicated that he relied on the communication. Therefore, there was no waiver. Similarly, in *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, the court held that information obtained by FDIC investigators, such as loan histories contained in "loan writeups" while mainly containing factual information, were entitled to attorney-client protection after noting

that the "writeups" had not been stripped of all opinions and had been expressly created in confidence in order to obtain legal advice. *See also Bauman v. Jacobs Suchard, Inc.,* 136 F.R.D. 460 (N.D.Ill.1990)—(questionnaires received from potential clients were privileged).

In the instant case, the audiotape recordings of plaintiff Mason Day's recollections of events which transpired at the construction sites are entitled to the attorney-client privilege. They were not recorded in the ordinary course of business but pursuant to the express direction of plaintiffs' attorney for the purpose of securing legal advice. The communications were intended to be confidential and were created and maintained with confidentiality. Mr. Day's recordation of the daily events at the construction sites include more than a mere collection of facts, but also include his opinions, selection of events and conclusions. Thus, the past communication to his attorney, as opposed to his present recollection of observations or his present opinions and conclusions, is privileged. Further, there is no evidence that plaintiffs have waived the privilege by utilizing the tape recordings or the transcripts in a way which would negate it.

▪ Finally, the Court rejects defendant's claim of need for the transcriptions. Unlike work product protection, under either federal common law or North Carolina law, the attorney-client privilege does not implicate a balancing test wherein the privilege may be disregarded solely because the opposing party can show a sufficient need for the information. *Solomon v. Scientific American, Inc.,* 125 F.R.D. at 38–39; and *see generally* 1 Brandis, *supra,* § 62. *But see Leonen v. Johns–Manville,* 135 F.R.D. at 100—(New Jersey provides for a piercing of the privilege on public policy grounds). Therefore, the Court upholds plaintiffs' claim of attorney-client privilege for the audiotapes and transcriptions.

### Waiver of Attorney–Client Privilege or Work Product Protection

▪ Defendant asserts that plaintiffs have waived any protection for the tapes and transcriptions because they made a general, unspecified objection to the discovery requests. In response to the pertinent requests for production of documents, plaintiffs merely stated that the information constituted attorney-client material or work product and was privileged. However, within thirty to forty days after the discovery was answered and before the motion to compel, plaintiffs clarified their objection and identified the discovery material at issue. Plaintiffs argue that because they provided defendant with a reasonable description of the documents and the reason for making the claim of privilege or protection, they have met their duty. While the Court finds plaintiffs did reasonably identify the protected discovery material, they did not satisfy their additional duty of moving for a Fed.R.Civ.P. 26(c) protective order in order to support their claim for privilege and protection.

▪ Fed.R.Civ.P. 34(b) requires that responses to requests for the production of documents must be specific. In addition, there is a duty on the party who objects to disclosure, based on privilege or work product protection, to establish that claim. *Marx v. Kelly, Hart & Hallman, P.C.,* 929 F.2d 8, 11–12 (1st Cir.1991); *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 541–42 (10th Cir.1984). The party opposing disclosure has a duty to seek a protective order and has the burden of showing good cause through a factual demonstration if necessary. *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408 (M.D.N.C.1991). Requests for protective orders (either explicit or implicit) must be seasonably made and the failure to timely request and support a motion for a protective order constitutes grounds for denying the same and deeming the privilege waived. *Marx v. Kelly, Hart & Hallman, P.C.,* 929 F.2d at 12; *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d at 542; *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408. Even if the Court ultimately grants a motion for a protective order, it may still assess costs for the delay and expenses caused by any dilatory action. *Brittain, supra.*

In the instant case, defendant does not seek to deny plaintiffs' request for work product protection or attorney-client privilege on the grounds that plaintiffs failed to request a protective order. Rather, it claims plaintiffs improperly objected to discovery by failing to set out in detail the basis for their requests for privilege and work product protection. For their part, plaintiffs roam far off the mark by citing *Toledo Edison Co. v. G A Technologies, Inc.,* 847 F.2d 335, 339 (6th Cir.1988), for the proposition that defendant has the burden of showing that the tapes and transcripts in this case are not privileged. While certain words in that opinion might have led plaintiffs to jump to that conclusion, the Court finds that the case does not stand for that proposition which is substantially contrary to the extant law. *Marx v. Kelly, Hart & Hallman, P.C.,* 929 F.2d at 12; *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540; *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408.

Even though they failed to move for a protective order and erroneously contend defendant must disprove their claim of privilege, plaintiffs did come forward and meet their burden of showing entitlement to attorney-client privilege and work product protection in response to defendant's motion to compel. That factor carries greater weight than plaintiffs' filing inadequate discovery responses in the first instance. The filing of inadequate discovery responses, standing alone, will generally not justify a finding that the privilege or work product protection has been waived. It may, however, justify other sanctions. Under the circumstances of this case, the Court finds that plaintiffs have substantially complied with all that is required of them except for their failure to formally move for a protective order. In this regard plaintiffs come closer to the situation in *Brittain, supra,* rather than *Marx, supra,* or *Peat, Marwick, supra,* where the parties failed to timely offer proof in support of the claim of privilege. Nor is there other evidence that plaintiffs in any way delayed the resolution of this controversy or acted in bad faith or for any dilatory or ulterior motive as was the situation in *Marx, su-*

*pra,* and *Peat, Marwick, supra.* Therefore, the Court declines to deny plaintiffs' request for work product and attorney-client protection on the grounds that plaintiffs failed to make a formal request for a protective order or because of their initially inadequate discovery response which was quickly rectified. Nevertheless, some sanction is appropriate. *Brittain v. Stroh, supra,* at 414–15.

Plaintiffs are responsible for some unnecessary delay and extra expense caused by their delay in setting out in detail their grounds for the claims of attorney-client privilege and work product protection, by their failing to move for a protective order, and by their pressing the frivolous argument that defendant had the burden of proving the transcripts were not privileged. Some sanction is appropriate for this conduct. *Id.* The Court finds defendant sustained extra costs in pursuing this matter and in briefing the issues. Therefore, even though plaintiffs have prevailed on the motion, the Court will not grant them attorney's fees and instead will grant defendant attorney's fees in the sum of $250.00.

IT IS THEREFORE ORDERED that defendant's motion to compel plaintiffs to produce audiotapes and their transcriptions in response to Interrogatory No. 15 and Document Request No. 7 be, and the same hereby is, denied.

IT IS FURTHER ORDERED that, pursuant to Fed.R.Civ.P. 37(a) and the Court's inherent authority, plaintiffs pay to defendant the sum of $250.00 as reasonable costs and sanctions for having obtained this Order.