**MCI CONSTRUCTION, LLC, Plaintiff,**

**v.**

**HAZEN AND SAWYER, P.C., a New York Corporation and City of Greensboro, North Carolina, a Municipality organized under the laws of North Carolina, Defendants.**

No. 1:99–CV–00002.

United States District Court, M.D. North Carolina.

Feb. 19, 2003.

Christopher Terry Graebe, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, Timothy G. Barber, Womble, Carlyle, Sandridge & Rice, PLLC, Charlotte, NC, C. Allen Foster, Eric C. Rowe, Amy Bogart Ostrander, David S. Panzer, Washington, DC, Charlie C.H. Lee, Robert M. Moore, Richard O. Wolf, Moore & Lee, LLP, Mclean, VA, for plaintiff.

Evelyn M. Coman, Newsom, Graham, Hedrick & Kennon, P.A., Durham, NC, Steve Macon Pharr, Stacey Denise Bailey, Pharr & Boynton, PLLC, Winston–Salem, NC, John M. Deangelis, Caroline R. Heil, James T. Williams, Michael D. Meeker, George William House, Brooks, Pierce, McLendon, Humphrey & Leonard, W. Kearns Davis, Jr., Office of U.S. Attorney, Greensboro, NC, for defendants.

### ORDER

ELIASON, United States Magistrate Judge.

This case comes before the Court on plaintiff's renewed motion to compel the City of Greensboro (the City) to produce certain documents and to answer plaintiff's second set of interrogatories. That motion has been fully briefed and is ready for decision.

### Case History

Plaintiff previously made a motion to compel the same materials and information. There, plaintiff claimed the information would show possible bias on the part of Ed Kitchen, the City Manager for the City, in his alleged role as arbitrator in a contract dispute between the parties. The City resisted disclosure based on attorney-client privilege and work product protection. In a June 28, 2001 Order, the motion was denied on the ground that discovery on the issue of arbitrator bias was premature. The merits of the privilege and protection assertions were not addressed.

Later, on September 6, 2002, it was determined that the City Manager was not an "arbitrator" under the parties' agreement, but merely deemed a referee. Thus, under the contact, no arbitration was to be conducted. Rather, plaintiff was required to submit its claims to the City Manager who would then act as a referee.

Given the nature of the September 6, 2002 Order, plaintiff now seeks reconsideration of its motion to compel which was denied in the Order issued on June 28, 2001. At the time of the briefing of the original motion to compel, both parties were working under the assumption that the City Manager was an arbitrator and the Court ruled based on that assumption. This led to a ruling which did not address the merits of plaintiff's present claims. This change in circumstances does make reconsideration of plaintiff's motion appropriate, especially in light of a new theory raised by plaintiff based on the North Carolina Public Records Act.

### Discussion

The information plaintiff seeks generally consists of communications between the City and the City Manager. However, the information that is in dispute consists of communications, both oral and written, that the City

Manager had with the City's outside litigation counsel. The City has refused to produce this information because it claims that it is covered by attorney-client privilege and/or work product protection.

Plaintiff advances several arguments for disclosure. It first incorporates a ground raised in its first motion to compel. There, plaintiff argued that the City Manager was an arbitrator, that due to this status he had a duty to reveal facts and circumstances that created an impression of bias, that he had engaged in *ex parte* communications with the City's attorneys, that this was an improper failure to maintain his independence which created an appearance of bias, and, therefore, that the City could not maintain its claims of privilege under these circumstances. The Court must examine the issue of attorney-client privilege by looking to North Carolina law.[1]

Arguing for disclosure on the basis of bias raises an insurmountable problem for plaintiff. The September 6th Order specifically found that the City Manager was not an arbitrator. Moreover, the Court noted that there was no need for discovery as to whether the City Manager had a bias in favor of the City because the bias was self-evident, one known to the parties at the time they signed the contract.[2] Plaintiff fails to provide any North Carolina authority for the

proposition that an attorney-client privilege cannot exist between a contractually appointed decision-maker, with known bias, and his or her attorney. Therefore, the Court rejects plaintiff's argument that no attorney-client privilege exists for the communications.

Plaintiff next argues that the North Carolina Public Records Act ("Act") abrogates the North Carolina common law attorney-client privilege. It asserts that the documents which the City seeks to protect are public documents under the Act which must be disclosed.[3] The Act states that "public records and public information" belong to the people who may obtain them free or at minimal cost. N.C. Gen.Stat. § 132–1(b). It defines "public records" as "all documents, ... made or received pursuant to law or ordinance in connection with the transaction of public business by an agency of North Carolina government or its subdivisions." N.C. Gen.Stat. § 132–1(a). If a document is classified as a "public record" under the Act, the person having custody of the document must permit it to be inspected and examined at reasonable times. N.C. Gen.Stat. § 132–6.

There are statutory exceptions to the mandatory disclosure provisions of the Act. One exception is for confidential communications covered by the attorney-client privilege.[4]

1. When the court's jurisdiction is based on diversity of citizenship, the court must look to state law to determine the existence of attorney-client privilege. *Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 607 (M.D.N.C.1992). State law defines both the existence and the limitations of the privilege.

2. In light of this observation, the Court questions the relevance of any of the material sought by plaintiff. Perhaps the motion to compel could be denied on this basis. However, plaintiff claims the evidence has other relevant uses and, although plaintiff's statement is conclusory and undefined, the City has not challenged it.

3. The Public Records Act ("Act") only covers documents, albeit documentary material regardless of physical form. N.C. Gen.Stat. § 132–1(a). Therefore, plaintiff's Public Records Act exception assertions do not encompass any privilege asserted to oral communications that plaintiff seeks to obtain via its interrogatories. Because the Court has rejected any exception to the attorney-client privilege based on the referee bias

argument, plaintiff is left with no argument whereby it can defeat the City's claim of privilege against disclosing oral communications and its motion will be denied to the extent that it seeks oral attorney-client communications.

4. N.C. Gen.Stat. § 132–1.1(a) provides:

   (a) Confidential Communications.—*Public records*, as defined in G.S. 132–1, *shall not include written communications* (and copies thereof) to any public board, council, commission or other governmental body of the State or of any county, municipality or other political subdivision or unit of government, made within the scope of the attorney-client relationship by any attorney-at-law serving any such governmental body, concerning any claim against or on behalf of the governmental body or the governmental entity for which such body acts, or *concerning the prosecution, defense, settlement or litigation of any judicial action,* or any administrative or other type of proceeding to which the governmental body is a party or by which it is or may be directly affected. Such written communication and

However, even for these documents, they become public records "three years from the date such communication was received . . . ." N.C. Gen.Stat. § 132–1.1. *See News and Observer Pub. Co., Inc. v. Poole,* 330 N.C. 465, 412 S.E.2d 7 (1992)(discussing the Public Records Act generally). Plaintiff contends that the documents withheld by the City are public records that are more than three years old and, therefore, subject to disclosure.

The City does not dispute the accuracy of the basic law as set out above. Nor does it claim that the documents it seeks to withhold are not "public records" within the definition set out by the Act or that they are not more than three years old at this time. Instead, the City makes a policy argument. It contends that the Public Records Act should be construed so that documents do not automatically become public when they are connected to ongoing litigation.

The City supports its interpretation of the Public Records Act using two points, neither of which is based on the text of the statute. First, it contends that no court has ever allowed a party to use the Public Records Act to gain access to privileged documents during pending litigation. This, however, does not prove anything other than that the issue is one of first impression. It may well be true that no court has held that the Public Records Act requires the release of three-year-old privileged documents during pending litigation. What is more important is that the City has failed to cite any case where a court has refused to require the release of privileged documents classified as public records under the Act because litigation is pending. Based on the parties' submissions, it appears to be an open question under North Carolina law.[5] In and of itself, the lack of any interpretation of the Act by the North Carolina courts fails to aid either party. It only means that the Court and the parties are left without direct guidance from the North Carolina courts as to what the outcome of plaintiff's motion should be.

For its second interpretation point, the City points out that the North Carolina General Assembly has recognized the need of public entities for the attorney-client privilege and allows them to hold closed session meetings in order to communicate with attorneys. Based on these statements, the City concludes that the General Assembly could not have meant to make privileged documents public during pending litigation.

The City attempts to use this second point to fill the void of case law. As the City correctly states, the North Carolina General Assembly has recognized the right of public entities to hold closed session meetings in order to consult with their attorneys. N.C. Gen.Stat. §§ 143–318.11(3); *and see Sigma Construction Co., Inc. v. Guilford County Bd. of Education,* 144 N.C.App. 376, 547 S.E.2d 178 (attorney-client statements in minutes protected as well), *rev. dismissed,* 354 N.C. 366, 556 S.E.2d 578 (2001). However, this has nothing to do with plaintiff's use of the Public Records Act in the present case. Plaintiff seeks documents which were not generated in a closed door meeting. For

copies thereof shall not be open to public inspection, examination or copying unless specifically made public by the governmental body receiving such written communications; provided, *however,* that *such written communications* and copies thereof *shall become public records* as defined in G.S. 132–1 *three years from the date such communication* was received by such public board, council, commission or other governmental body. (emphasis added)

**5.** A number of explanations may explain the lack of published case law. The first is that discovery may have closed in many cases prior to the expiration of the three-year period. Second, it could be that the public entities, when faced with a Public Records request, have simply turned over the documents. *See, e.g., Shella v. Moon,*

125 N.C.App. 607, 481 S.E.2d 363 (1997)(when plaintiff's late discovery request for records made under the Act was denied, she filed a separate action and the State mooted the second case by releasing the documents).

Finally, it could be that the North Carolina trial courts have found that the North Carolina work product protection rule, N.C. Gen.Stat. § 1A–1, Rule 26(b)(3), trumps the Public Records Act during litigation or longer and, unlike attorney-client privilege, the legislature did not enact a specific waiver of work product protection for public documents. If so, those courts would apply work product protection in the same way this Court applies the federal work product rule, as will be discussed next. *See generally Evans v. United Services Auto. Ass'n,* 142 N.C.App. 18, 29, 541 S.E.2d 782, 789 (2001).

such documents, the North Carolina General Assembly has explicitly decided that the attorney-client privilege only lasts three years from the time the document was received. N.C. Gen.Stat. § 132–1.1. Therefore, the City's argument concerning the General Assembly allowing closed sessions carries no weight.

In the end, the Public Records Act is quite clear on its face. All documents designated as public records are open for viewing. As for documents containing attorney-client privilege communications, the North Carolina General Assembly did consider the issue and it explicitly reached a decision that documents covered by that privilege could be withheld, but only for three years, even though the communications may have been made with respect to litigation. *See* n. 3, *supra.* It did not provide any other exception.

Even if the Court were to conclude that the failure to provide a pending litigation exception to the legislatively mandated waiver of attorney-client privilege was an oversight or that it would be better policy to extend the privilege through the course of pending litigation, it would be improper for this Court to create an exception that neither the North Carolina legislature nor the courts have seen fit to do. *Burris Chemical, Inc. v. USX Corp.,* 10 F.3d 243 (4th Cir.1993)(federal courts must apply state law as it exists). This Court cannot extend or create North Carolina law and it will be up to the courts of North Carolina or the North Carolina General Assembly to make any necessary changes or interpretation to create an exception to waiver which the City seeks.

Although the City cannot prevail in its attempt to avoid the loss of attorney-client privilege under the Act for communications found in three-year old public documents, it has also raised an argument based on work product protection. "In matters involving work product protection, as opposed to attorney-client privilege, federal courts apply federal law, even in diversity cases." *Mason C.*

*Day Excavating v. Lumbermens Mut. Cas. Co.,* 143 F.R.D. 601, 605 (M.D.N.C.1992); *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Companies,* 123 F.R.D. 198, 201 (M.D.N.C.1988). Therefore, even if the North Carolina legislature intended to waive all state law privileges and protections against disclosure by enacting the Public Records Act, that waiver does not control and mandate disclosure of the documents which are protected by the federal work product rule in federal litigation.

Here, the City claims that all of the documents sought by plaintiff are attorney work product as defined by Fed.R.Civ.P. 26(b)(3) and entitled to protection against disclosure absent a showing of substantial need on the part of plaintiff. Plaintiff has not challenged the factual basis of the City's assertion of work product protection in either the original motion or reply brief. This leaves the City's assertions on the matter essentially unopposed. Consequently, the City need not turn over any documents for which it has asserted work product protection.[6]

Even though the Court finds that the City need not turn over documents for which it has asserted work product protection, this does not entirely end the matter. As exhibits to its renewed motion to compel, plaintiff has included copies of the privilege log that the City submitted covering the documents at issue. As to many of those documents, the City asserted work product protection (often along with attorney-client privilege). However, for several of the documents, it asserted only attorney-client privilege, with no mention of work product protection. In its response brief, the City does refer to all challenged documents as being work product. However, simply making a statement in a brief without any support is both late and insufficient. Claims for protection against discovery must be timely made. *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 413 (M.D.N.C.1991). The City's assertions of privilege are controlled by its privilege log. Therefore, with the loss of attorney-client

**6.** This is not to say that there is any indication that, had plaintiff attempted to combat the City's work product arguments, plaintiff would have prevailed. In fact, the opposite appears to be true. Substantial need does not arise out of plaintiff's claims of arbitrator or referee bias which was obvious to all at the inception of the contract.

privilege protection because of the Public Records Act, the City is left without any claims of privilege as to certain of the documents listed in its privilege log. It should immediately produce those documents to plaintiff.

**IT IS THEREFORE ORDERED** that plaintiff's renewed motion to compel the City to produce Ed Kitchen's correspondence and answer plaintiff's second set of interrogatories (docket no. 215) is granted as to any responsive documents for which the City did not previously assert work product protection in a privilege log and denied in all other respects.